**Kirby Bruce MARSHALL,
Plaintiff–Appellee,**

v.

**TRW, INC., REDA PUMP DIVISION,
Defendant–Appellant.**

No. 88–2832.

United States Court of Appeals,
Tenth Circuit.

April 16, 1990.

Stephen L. Andrew (D. Kevin Ikenberry of McCormick, Andrew & Clark, P.C., with him on the brief), Tulsa, Okl., for defendant-appellant.

Patrick J. Malloy, III (Leslie V. Williams of Malloy & Malloy, Inc., with him on the brief), Tulsa, Okl., for plaintiff-appellee.

Before LOGAN, BRORBY, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Kirby Bruce Marshall, a citizen of Oklahoma, brought suit in the United States District Court for the Northern District of Oklahoma, against TRW, Inc., a foreign corporation doing business in the State of Oklahoma with its principal place of business in Cleveland, Ohio. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

The gist of the complaint was that Marshall, an employee of the defendant corporation in Bartlesville, Oklahoma, filed a workers' compensation claim arising out of injuries sustained by Marshall in the course of his employment with the defendant, in connection with which he retained a lawyer, and that the defendant, in retaliation therefor, discharged Marshall on November 8, 1985, in violation of 85 O.S. (1976 Supp.) §§ 5 and 6. Marshall sought money equal to his lost earnings from the time of the injury up until the time of trial, reinstatement, and punitive damages.

Although we are unable to find defendant's answer in the record before us, it appears that the defendant denied retaliatory discharge and alleged that Marshall's discharge resulted from Marshall's violation of the collective bargaining agreement between defendant and its employees' union which forbade employees to be employed by any other company or person when on medical leave.

A jury trial resulted in a verdict in favor of Marshall and against the defendant for $150,000 in actual damages and $125,000 in punitive damages. In answer to a special interrogatory submitted by the court, the jury also found that because of hostility in the work place reinstatement was not an appropriate remedy and awarded Marshall an additional $250,000 as future damages. Judgments based on the jury's several verdicts were duly entered. Defendant's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, was denied. Pursuant to 28 U.S.C. § 1291, defendant appeals.

As indicated, Marshall's action is based on Oklahoma statutes. Specifically, 85 O.S. § 5, which provides as follows:

"No person, firm, partnership or corporation may discharge any employee because the employee has in good faith filed a claim, or has retained a lawyer to represent him in said claim, instituted or caused to be instituted, in good faith, any proceeding under the provisions of Title 85 of the Oklahoma Statutes, or has testified or is about to testify in such proceeding. Provided no employer shall be required to rehire or retain any employee who is determined physically unable to perform his assigned duties."

Additionally, Marshall relies on 85 O.S. § 6, which provides as follows:

"Except as provided in Section 29 of this act, a person, firm, partnership or corporation who violates any provision of Section 5 of this title shall be liable for reasonable damages, actual and punitive if applicable, suffered by an employee as a result of the violation. An employee discharged in violation of the Workers' Compensation Act shall be entitled to be reinstated to his former position. Exemplary or punitive damage awards made pursuant to this section shall not exceed One Hundred Thousand Dollars ($100,-000.00). The burden of proof shall be upon the employee."

As indicated, defendant alleges that it discharged Marshall because he obtained employment with another company while on medical leave in violation of the collective bargaining agreement between it and its employees' union. In this regard, the collective bargaining agreement between the defendant and its employees' union provides in Article 15 as follows:

"*Section 1.* Employees with three (3) or more years of continuous service, upon written request, shall be eligible for a leave of absence at the discretion of the Company, not to exceed one (1) year and fifteen (15) days. If an employee enters into employment with any other company or person during such leave of absence, the employment shall be terminated as of the date of the leave of absence, unless otherwise agreed upon by the Company and the Union. The employee's seniority, as defined in Article 17, shall not accumulate after fourteen (14) days of continuous absence for personal reasons. The granting of such leave of absence shall be at the sole discretion of the Company.

. . . .

"*Section 6.* Employees, who are under a doctor's care, shall be considered on medical leave after thirty (30) days of continuous absence. Bargaining unit seniority of an individual shall continue while on medical leave for one (1) year and fifteen (15) days. A leave may be continued with the mutual agreement of the Company and Union. . . . The duration of a medical leave and conditions thereof shall be the same as defined in Section 1 of this Article."

Before addressing the issues raised on appeal, a brief recital of the background facts will put things in focus. Marshall, who had been employed by the defendant for some 16 years, suffered severe work-related burns on April 11, 1985. He filed a claim for workers' compensation benefits under state law and was being paid benefits when he was placed on so-called "medical leave" by the defendant.[1] Marshall

---

1. The defendant was apparently self-insured, and Marshall received all benefits and other payments directly from the defendant.

also retained an attorney to represent him in connection with his possible claims against the defendant. On November 8, 1985, Marshall was discharged by the defendant. It was Marshall's theory of the case that defendant discharged him in retaliation for his filing of a workers' compensation claim and retaining an attorney to represent him in pursuing his various remedies.

It was defendant's theory of the case that Marshall's discharge had nothing to do with his filing of a workers' compensation claim or retaining an attorney, and that in reality he was fired because he was employed, or self-employed, in a bicycle shop while on medical leave, and that such violated the collective bargaining agreement between defendant and its employees' union.[2]

In response, Marshall contended that the reason given him by defendant for his discharge was pretextual. In this regard, Marshall testified that he had run the bicycle shop for a period of time before being placed on medical leave as a result of his work-related injuries, and that he regarded such as a legitimate form of "moonlighting." There was evidence that Marshall's operation of the bicycle shop did not interfere with his duties at defendant's plant, that it was both known by defendant and permitted by defendant. Marshall testified that while he rehabilitated from his burn injuries he had little or nothing to do with the day-to-day operation of the shop. Defense witnesses agreed that before they terminated Marshall's employment, they made no contact with Marshall or otherwise inquired about any so-called "outside employment." Other witnesses testified that Marshall was the only employee ever discharged for accepting employment while on medical leave.

## I. Pre-emption

■ Defendant's principal argument in this court, as it was in the district court, is that under Article VI, clause 2, of the Unit-

ed States Constitution, Marshall's state tort claim of retaliatory discharge for filing a workers' compensation claim is pre-empted by § 301 of the Labor Management Relations Act. 29 U.S.C. § 185(a); *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); and *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

We believe the pre-emption issue is controlled by *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). Defendant claims that *Lingle* supports its claim of pre-emption, whereas Marshall asserts that *Lingle,* "if anything," supports his position of "no pre-emption."

The State of Illinois has a statute similar to the one we are presently concerned with which provides that an employee who is discharged for filing a workers' compensation claim may recover compensatory and punitive damages from his or her employer. Ms. Lingle was employed in the defendant's plant in Herrin, Illinois. She notified the defendant that she had been injured in the course of her employment and requested compensation pursuant to the Illinois Workers' Compensation Act. A week later her employment was terminated by the defendant and the reason given for her discharge was for filing a "false workers' compensation claim." The union representing Ms. Lingle filed a grievance pursuant to the collective bargaining agreement which precluded discharge except for "proper" or "just cause." Ultimately, an arbitrator ruled for Ms. Lingle and ordered her reinstatement with full back pay.

Meanwhile, Ms. Lingle filed an action in Illinois state court under the Illinois statute which prohibited an employee's discharge for exercising her rights under the Illinois workers' compensation laws. It was removed to the federal district court on the grounds of diversity. The district court thereafter dismissed the complaint on the ground that federal law pre-empted the state tort claim, concluding that the "claim

---

**2.** Pursuant to the grievance procedure provided in the collective bargaining agreement, Marshall filed a grievance over his discharge, insisting that he had not violated Article 15 of the collective bargaining agreement. We are advised that the grievance has not yet been arbitrated.

for retaliatory discharge is 'inextricably intertwined' with the collective bargaining provision prohibiting wrongful discharge or discharge without just cause" and that to allow the state tort claim to proceed to conclusion would undermine the collective bargaining agreement and the arbitration procedures contained therein. On appeal, the Seventh Circuit Court of Appeals, sitting en banc, agreed that the state tort claim was pre-empted by § 301 of the Labor Management Relations Act.

On certiorari, the Supreme Court reversed. In so doing, the Supreme Court spoke as follows:

"Illinois courts have recognized the tort of retaliatory discharge for filing a workers' compensation claim, ... and have held that it is applicable to employees covered by union contracts.... '[T]o show retaliatory discharge, the plaintiff must set forth sufficient facts from which it can be inferred that (1) he was discharged or threatened with discharge and (2) the employer's motive in discharging or threatening to discharge him was to deter him from exercising his rights under the Act or to interfere with his exercise of those rights.' ... Each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement. To defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge; ... this purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement. Thus, the state-law remedy in this case is 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement." (Citations and footnotes omitted.)

The Supreme Court in *Lingle* also noted that the Court of Appeals, as well as the district court, believed that from a factual standpoint the state tort claim was "inextricably intertwined" with the collective bargaining agreement and, in connection therewith, commented as follows:

"We agree with the Court's explanation that the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether Lingle was fired for just cause. But we disagree with the court's conclusion that such parallelism renders the state-law analysis dependent upon the contractual analysis. For while there may be instances in which the National Labor Relations Act pre-empts state law on the basis of the subject matter of the law in question, § 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent' of the agreement for § 301 pre-emption purposes." (Footnotes omitted.)

*Lingle*, in our view, indicates that there is no federal pre-emption in the instant case. Marshall alleged, and had the burden of proving, retaliatory discharge, i.e., the defendant discharged him for filing a workers' compensation claim. The defendant articulated a non-retaliatory reason for the discharge. Marshall then sought to show that the reason given, whether the reason was good, bad or indifferent, was entirely pretextual. The basic issue in our case, as in *Lingle*, is whether there was, or was not, a retaliatory discharge. As in *Lingle*, there is no necessity of interpreting the collective bargaining agreement.

We believe our holding in the instant case that there was "no pre-emption" is in accord with the result and rationale in *Peabody Galion v. Dollar*, 666 F.2d 1309 (10th

Cir.1981). In *Peabody,* numerous employees who had been discharged brought suit under 85 O.S. (1976 Supp.) §§ 5 and 6 against their employer, alleging they had been discharged because they had filed workers' compensation claims. Some of the plaintiffs had already had their claims submitted to arbitration and had lost. The defendant employer moved for summary judgment on the grounds that the plaintiff could only pursue arbitration under the bargaining agreement and could not maintain an action under 85 O.S. (1976 Supp.) §§ 5 and 6. The district court denied that motion and Peabody took an interlocutory appeal. In affirming the district court, we concluded "that the Oklahoma statute is not facially pre-empted by any of the federal labor laws."[3]

As supplemental authority, defendant cites *Doran v. Thermatex,* 132 L.R.R.M. 3041, 1989 WL 163700 (N.D.Oh.1989). That case, in our view, is different than the instant case. In *Doran,* the plaintiff-employee was terminated by the defendant-employer because his leave of absence arising from an industrial accident exceeded one year. The plaintiff brought suit under an Ohio statute which provided that an employer could not discharge an employee for filing a workers' compensation claim. The collective bargaining agreement between defendant and plaintiff's union provided that an employee's "seniority" is terminated if he has one year or more seniority and "is out of service for any reason for more than one year." Plaintiff amended his complaint to include allegations that he was discharged pursuant to the collective bargaining agreement. In this regard, it was plaintiff's position that the provision in the agreement above referred to simply meant that after one year's absence he lost his "seniority," but not his "employment." Defendant's position was that "loss of seniority" equates with "loss of employ-

ment." It was in this setting that the court held that the state court claim was pre-empted by federal common law principles where the dispute turned on the interpretation of a clause in the collective bargaining contract, and dismissed the action. Such is not our case.

## II. Future Damages

As stated above, the jury awarded Marshall $150,000 in actual damages sustained by him up until and through the trial of his case. In his complaint, Marshall also asked for reinstatement. By the time of trial, however, Marshall did not seek reinstatement claiming, through counsel, that because of work-place hostility reinstatement was inappropriate, and that he should, therefore, be compensated for future loss of income. Marshall, who was thirty-eight years of age at trial, testified that he had been unable to find any employment since his discharge by the defendant, although he continued to operate his bicycle repair shop.

The district court, without apparent objection, ruled that if there was such hostility between Marshall and the defendant as to render reinstatement inappropriate, then so-called "future damages" could be awarded in lieu of reinstatement.[4] The district court then asked the jury, by special interrogatory, to decide whether there was such hostility. If the answer was "no," then the district court would presumably have ordered reinstatement. The jury was further instructed, however, that if their answer to the interrogatory was "yes," then it could award future damages, which the jury did, and set the award therefor at $250,000.

On appeal, the defendant argues that there was no evidence of such hostility that would render reinstatement inappropriate and that, in any event, the evidence does

---

3. The Seventh Circuit in *Lingle* specifically addressed our *Peabody* and did not "agree with the Tenth Circuit's analysis of the presumption issue." *Lingle v. Norge Division of Magic Chef, Inc.,* 823 F.2d 1031, 1047 (7th Cir.1987). In granting certiorari, the Supreme Court in *Lingle* noted the conflict in the circuits.

4. In *Equal Employment Opportunity Commission v. Prudential Federal Savings and Loan Association,* 763 F.2d 1166, 1172–73 (10th Cir. 1985), an age discrimination case, we held that reinstatement is the preferred remedy, but where reinstatement is inappropriate because of "extreme hostility" in the work place future damages may be awarded.

not support an award of $250,000 as future damages. We agree.

■ 85 O.S. § 6 provides that an employer who violates 85 O.S. § 5 "shall be liable for reasonable damages, actual and punitive if applicable, ... [and] an employee shall be entitled to be reinstated to his former position." It would appear that under the statute "reinstatement" is the preferred remedy. We do not disagree with the district court that if hostility renders reinstatement inappropriate, future damages may be awarded in lieu thereof. Our problem is that we find no testimony from any source concerning hostility, or lack of hostility, between Marshall and defendant. There is nothing in the record to support any finding of hostility. As far as we can tell, there was no testimony bearing on the issue, although there was closing argument to the jury on the matter. The fact that there was retaliatory discharge, as the jury has now determined there was, does not by itself necessarily establish hostility. The statute itself recognizes that where there has been a retaliatory discharge, reinstatement is an appropriate remedy.

In our view, the finding of hostility in the work place is not supported by the record before us. Further, the evidence to support an award of $250,000 is thin. About all there is in this regard is testimony that Marshall was thirty-eight years of age at trial, was netting $22,000 in yearly salary, and had many years remaining until retirement age.[5]

In *Jackson v. City of Albuquerque*, 890 F.2d 225 (10th Cir.1989), a civil rights case, the plaintiff-employee was, *inter alia*, denied reinstatement and awarded "front pay" in the amount of $100,000. The employee appealed, seeking reinstatement instead of front pay. In reversing, we held that reinstatement was the "preferred remedy" and that there was insufficient evidence of hostility to render reinstatement

inappropriate. In *Jackson*, at 232, we noted "most of those making complaint against the plaintiff are no longer employed" by the defendant-employer. And in the instant case, the two employees of the defendant company who made the decision to discharge Marshall are no longer employed by defendant.

Accordingly, the judgment awarding future damages must be reversed.

### III. Punitive Damages

■ 85 O.S. § 6 provides that an employer who discharges an employee who in good faith files a claim under the Oklahoma Workers' Compensation laws "shall be liable for reasonable damages, actual and punitive, if applicable...." That statute was amended, effective November 1, 1986, so as to limit punitive damages to $100,000. Suit in the instant case was commenced on March 27, 1986, and Marshall had been discharged in November 1985. In such circumstance, the district court declined to apply the newly enacted "cap" on punitive damages in the instant case and, as above stated, the jury awarded punitive damages in the sum of $125,000. Marshall, incidentally, had requested punitive damages in the sum of $250,000 and, in line therewith, the jury was instructed that any award of punitive damages could not exceed $250,000.

Defendant asserts on appeal that the punitive damage award should be reduced to $100,000. Counsel agree that the Oklahoma Supreme Court in *Thomas v. Cumberland Operating Company*, 569 P.2d 974 (Okla.1977) held that statutory increases in wrongful death limitations were changes in a substantive right and would not be applied retroactively. Defendant argues that a different rule should be applied in the case of punitive damages. We are not persuaded. This matter has not yet been addressed by the Oklahoma Supreme Court, and we are not inclined to disturb the district court's prediction of how the

---

5. In *Equal Employment Opportunity Commission v. Prudential Savings & Loan Association*, 763 F.2d 1166, 1173 (10th Cir.1985), *cert. denied, Prudential Fed'l Sav. & Loan Ass'n v. E.E.O.C.*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985), we recognized that "future" damages are inherently open to the charge of uncertainty and speculation, and we outlined how courts can minimize this uncertainty.

Oklahoma Supreme Court would rule on the matter.

### IV. Arbitration Remedy

The defendant argues that the district court erred in excluding evidence concerning the availability of the arbitration remedy provided in the collective bargaining agreement. We do not agree. This particular argument is a facet of defendant's pre-emption argument. In this general connection, the district court instructed the jury that it was not to concern itself with any interpretation of the collective bargaining agreement, stating that "you are not to decide whether the defendant correctly or incorrectly interpreted any provision" of the collective bargaining agreement and that the issue to be resolved by the jury was whether Marshall's filing of a workers' compensation claim was a "significant factor" in defendant's decision to terminate. In sum, the remedy provided by state law in 85 O.S. §§ 5 and 6 is independent of possible remedies provided in the collective bargaining agreement. The two are not "inextricably intertwined." Availability of arbitration is immaterial.

The judgment is affirmed except the judgment for future damages, which is reversed. The case is remanded for further proceedings only on the issue of reinstatement vis-a-vis future damages.