United States Court of Appeals,

Fifth Circuit.

No. 91-7385.

Miguel MEDRANO, Plaintiff-Appellee,

v.

EXCEL CORPORATION, Defendant-Appellant.

March 9, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before JOLLY and WIENER, Circuit Judges, and FITZWATER, District Judge:[*]

GRADY JOLLY, Circuit Judge:

This appeal presents a little twist in the basic question of whether a state claim for retaliatory discharge under workers' compensation law is pre-empted pursuant to a collective bargaining agreement. Our plaintiff and appellee, Miguel Medrano, sustained work-related injuries and filed two workers' compensation claims, both of which he settled. On the date of the settlement, he was still under medical restrictions relating to work duties that could not be accommodated by his employer, Excel Corporation. Applying the terms of a collective-bargaining agreement (CBA), Excel terminated Medrano's employment. Medrano—asserting diversity jurisdiction—filed a wrongful discharge complaint against Excel. In his complaint, Medrano alleged that Excel discharged him in violation of article 8307c of the Texas Workmen's Compensation Act. Medrano alleged that Excel's alleged reliance on the CBA as the reason for discharge was a mere pretext, and that Excel really terminated him in retaliation for filing a workers' compensation claim. Things changed, however, at the outset of the trial. Once the trial began, Medrano argued that the provision of the CBA itself constituted discrimination in violation of article 8307c. Excel then argued to the district court that Medrano's claim, as presented at trial, was pre-empted by section 301 of the Labor Management Relations Act (LMRA). Excel was unsuccessful, however, in obtaining, first, a leave to amend its answer, and then in obtaining a directed verdict, a judgment notwithstanding the verdict (JNOV), or

---

[*]District Judge of the Northern District of Texas, sitting by designation.

a new trial—all based on federal pre-emption of Medrano's state law claim. The $60,000 jury verdict for Medrano was entered as the judgment of the court, and Excel appeals.

I

Excel employed Medrano as a butcher at its Plainview, Texas, meat packing plant in June 1989. During November of that year, Medrano suffered injuries to his left wrist, his right arm, and his right shoulder. As a result of his injuries, Medrano was unable to work for a substantial part of 1990. Medrano filed two workers' compensation claims and collected weekly compensation benefits.

Medrano returned to work on October 5, 1990, with the restriction that he could not use a knife or hook for more than 65% of the time. Medrano was still recovering from his shoulder injury, which restricted him to light duty for four months. On November 12, however, Medrano's doctor determined that his current position was too stressful to his shoulder and further restricted Medrano's work conditions. On November 13, Medrano was medically prohibited from all use of knives or hooks. On November 28, 1990, Medrano settled his two workers' compensation claims for approximately $27,000.00. On this date, there were no jobs available at Excel that could accommodate Medrano's medical restrictions.

On December 13, 1990, Medrano and thirty-seven other Excel employees filed suit against Excel, alleging harassment, discrimination, and retaliation in violation of Tex.Rev.Civ.Stat.Ann. art. 8307c, the Texas Workmen's Compensation Act. On January 11, 1991, Excel informed Medrano that his employment was terminated pursuant to Article XVII, Section 11(F), of the collective-bargaining agreement (CBA) between Excel and the United Food and Commercial Workers District Local # 540. This settlement provision states that an employee shall lose his seniority for full settlement for a disability that the company cannot accommodate.[1] The district court subsequently severed the claims of the thirty-eight plaintiffs in the previously filed lawsuit. Medrano amended his complaint, dropping the harassment claim.

Medrano's retaliatory discharge action was tried before a jury. On the second day of trial,

---

[1]Specifically, Article XVII, Section 11(F), provides that "[a]n employee shall lose his seniority for the following reasons: Full settlement with an employee for a disability that the Company cannot accommodate."

Excel moved for leave to file a trial amendment asserting that Medrano's claim was pre-empted by federal labor law. Medrano's complaint alleged that the settlement provision in effect when he settled his workers' compensation claims was merely a pretext for his termination; instead, Excel had terminated him in retaliation for exercising his rights under the Texas Workmen's Compensation Act. Excel argued, however, that beginning with the trial, Medrano had changed his position: He was now arguing that the settlement provision of the CBA itself constituted discrimination against employees who settled their workers' compensation claims. This claim, Excel argued, was pre-empted by section 301 of the Labor Management Relation Act (LMRA). Excel's motion to plead pre-emption, however, was denied. At the close of Medrano's case-in-chief, Excel moved for a directed verdict, again arguing that Medrano's claim—as presented at trial—was pre-empted by federal law. The district court, however, rejected Excel's argument.

On October 25, 1991, the jury found for Medrano. It concluded that Excel had terminated Medrano in retaliation for his pursuit of workers' compensation benefits. On November 8, 1991, Excel filed motions for a JNOV and for a new trial, again arguing that Medrano's claim was pre-empted by section 301; again, both motions were denied by the district court. On November 26, 1991, the district court entered judgment in favor of Medrano in the amount of $60,000.00. Excel appeals.

II

On appeal, Excel raises three issues. First, Excel argues that Medrano's claim of retaliation, as presented to the jury, was pre-empted by section 301 of the LMRA. Second, Excel argues that Medrano failed to present evidence to support the jury's verdict. Third, Excel argues that Medrano failed to present evidence to support the jury's verdict. Third, Excel argues that Medrano failed to present evidence to support an award of exemplary damages.

On the other hand, Medrano first argues that Excel has failed to preserve its claim of pre-emption for appeal; if the issue has been preserved, Medrano argues that his claim is not pre-empted. Medrano also defends his jury award against Excel's evidentiary attack.

III

A

Section 301 of the LMRA states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Any state law cause of action for violation of a collective-bargaining agreement is entirely displaced by federal law under section 301. *United Steelworkers of America, AFL-CIO-CLC v. Rawson,* 495 U.S. 362, 368, 110 S.Ct. 1904, 1909, 109 L.Ed.2d 362 (1990). Furthermore, state law is pre-empt ed by section 301 "in that only the federal law fashioned by the courts under section 301 governs the interpretation and application of collective-bargaining agreements." *Id.* A tort claim "inextricably intertwined" with consideration of the terms of the collective-bargaining agreement contract is pre-empted under section 301. *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985). If, however, the state-law claim can be resolved without interpreting the collective-bargaining agreement itself, the claim is independent of the agreement for section 301 pre-emption purposes. *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 410, 108 S.Ct. 1877, 1883, 100 L.Ed.2d 410 (1988).

B

Medrano's claim against Excel was for wrongful discharge under article 8307c of the Texas Workmen's Compensation Act, which provides in part:

> Protection of claimants from discrimination by employers; remedies; jurisdiction
>
> Section 1. No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding.
>
> Section 2. A person who violates any provision of Section 1 of this Act shall be liable for reasonable damages suffered by an employee as a result of the violation, and an employee discharged in violation of the Act shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee.

Tex.Rev.Civ.Stat.Ann. art. 8307c, Acts 1971, 62nd Leg. p. 884, ch. 115. In a case pursuant to article 8307c, the employee bears the initial burden of establishing a causal link between the discharge and

the workers' compensation claim. *Swearingen v. Owens-Corning Fiberglas Corp.,* 968 F.2d 559, 562 (5th Cir.1992). Retaliation only needs to be a determining factor for discharge to permit an employee to recover under article 8307c. *Id.* Once the employee has established the causal link, the employer must rebut the alleged discrimination by showing a legitimate reason for the discharge. *Id.*

C

In this case we are asked to "determine if [Medrano's] claim is sufficiently independent of the collective-bargaining agreement to withstand the pre-emptive force of section 301." *International Brotherhood of Electrical Workers, AFL-CIO v. Hechler,* 481 U.S. 851, 859, 107 S.Ct. 2161, 2167, 95 L.Ed.2d 791 (1987).[2] We conclude that it is not. Although this holding may at first appear somewhat at odds with our holdings in *Jones v. Roadway Express, Inc. (Roadway Express I* ), 931 F.2d 1086 (5th Cir.1991), and *Jones v. Roadway Express, Inc.* (*Roadway Express II* ), 936 F.2d 789 (5th Cir.1991), and the Supreme Court's holding in *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), an examination of the cases demonstrates the distinction.

The state-law claim in *Roadway Express I,* as in the instant case, was based on article 8307c. In *Roadway Express I,* we stated that "the basic issue in this case is whether a retaliatory discharge occurred" and concluded that "[r]esolution of this issue does not require an interpretation of the CBA." *Roadway Express I,* 931 F.2d at 1090. We held that because the retaliatory discharge claim was not "inextricably intertwined" with the CBA and did not depend upon a provision of the CBA, the state law claim was not pre-empted. *Roadway Express II,* 936 F.2d at 792. Furthermore, we observed that in the "typical case" involving such a retaliatory discharge, the claim could be resolved without an interpretation of the CBA. *Id.*

The case before us today, however, is not a typical straightforward case alleging a retaliatory discharge in violation of article 8307c. Unlike the plaintiff's claim in *Roadway Express I and II,*

---

[2]We quickly dismiss of Medrano's argument that Excel did not preserve this issue for appeal. Excel moved for a directed verdict at the close of Medrano's evidence, and also argued in its motion for JNOV or new trial that Medrano's claim was pre-empted by section 301. Therefore, Excel "properly preserved the issue" of pre-emption for appeal. *Stephens v. C.I.T. Group/Equipment Financing, Inc.,* 955 F.2d 1023, 1028 (5th Cir.1992).

Medrano's claim is indeed inextricably intertwined with a consideration of the terms of the CBA. Medrano actually drew on the settlement provision of the CBA itself to establish a violation of article 8307c. Medrano's claim is distinctive in that he alleged Excel—by applying a specific provision of the CBA—discriminated against him because he *settled* a workers' compensation claim, not because he *filed* one. Throughout trial, Medrano drew a distinction between those employees who filed a workers' compensation claim but did not settle (not discharged), and those who filed a claim but did settle (discharged). Medrano was essentially challenging the very legality of Article XVII, Section 11(F), of the CBA, which Excel had faithfully applied and which was the basis for Medrano's termination. Medrano's claim, without a doubt, is substantially dependent upon the meaning of a term of the CBA and its applicability in this case.

In *Lingle* the Court concluded that the "purely factual questions" necessary to show retaliatory discharge in that case "pertain[ed] to the conduct of the employee and the conduct and motivation of the employer." *Lingle,* 486 U.S. at 407, 108 S.Ct. at 1882. The Court reasoned that the plaintiff's state law retaliatory discharge claim was independent of the CBA because "resolution of the state-law claim [did] not require construing the collective-bargaining agreement." *Id.* To the contrary here—and we repeat ourselves—Medrano's claim clearly requires construing the CBA. The unquestioned basis of Excel's discharge of Medrano was the settlement provision of the CBA; that point is not in dispute. What is disputed in this case is whether the *provision itself* was illegal or discriminatory. Unlike the facts presented in *Lingle,* here the CBA must be construed for resolution of Medrano's state law claim. "No matter in what glamorous garb it is dressed, the basic thrust" of Medrano's claim is that the enforcement of the settlement provision of the CBA "itself constitutes a tort under state law." *Strachan v. Union Oil Co.,* 768 F.2d 703, 704 (5th Cir.1985).[3]

At trial, Medrano acknowledged that he was discharged pursuant to the settlement provision of the CBA, but argued that this provision itself constituted discrimination against employees who

---

[3]We find our recent decision in *Bagby v. General Motors Corp.,* 976 F.2d 919 (5th Cir.1992), to be applicable to this case. In *Bagby* we concluded that when a plaintiff "asserts that acts unquestionably taken in accordance with the provisions of the CBA were nonetheless tortious," such "claims will obviously require an interpretation of the CBA." *Id.* at 921-22.

settle their claims. In essence, Medrano's claim was that Article XVII, Section 11(F), of the CBA was an admission by Excel that it discriminated against Medrano in violation of article 8307c because this section of the CBA allowed Excel to discriminate against any workers' compensation claimant who settled his claim while Excel was unable to accommodate him at work. Throughout the trial, Medrano referred to this provision of the CBA and attempted to show the jury that Excel discriminated not only against Medrano individually but against any employee who settled a workers' compensation claim as opposed to an employee who did not.

Medrano's attorney began his attack on the settlement provision of the CBA during voir dire,[4] and his challenge to the CBA continued during opening statements. Medrano called six witnesses, three of whom were questioned extensively about the terms of the CBA. Excel called only three witnesses, but on cross-examination Medrano's attorney again concentrated on the terms of the CBA. Even during his closing arguments, Medrano's attorney's emphasis was on the CBA. Medrano was not challenging the actions of his employers under section 8307c; instead, he was challenging a provision of the CBA that was applied by his employer. Because the resolution of Medrano's claim required an interpretation of the CBA, his claim was clearly pre-empted by section 301.

REVERSED.

---

[4]Medrano's attorney told prospective jurors that "[y]ou are going to be asked to consider whether *this rule* [Article XVII, Section 11(F) ] violates the law, and I think the evidence will show plainly it does. And I will ask you, just because there was a union contract involved where they managed to get it in the contract, that would it keep you from fairly considering *the issue* at hand, which is *whether that rule discriminates* against employees that settle claims." (Emphasis added.)