**James ROBINSON, Plaintiff,**

v.

**WILSON CONCRETE CO., Defendant.**

**Civil Action No. 95–2320–EEO.**

United States District Court,
D. Kansas.

Jan. 23, 1996.

---

Angela Y. Habeebullah, Kansas City, KS, Mickey Dean, Kansas City, MO, for plaintiff.

Mark A. Ferguson, Lathrop & Gage, L.C., Overland Park, KS, George C. Rozmarin, Michael J. Mooney, Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., Omaha, NE, Brian N. Woolley, Teresa J. Stewart, Lathrop & Gage, L.C., Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on defendant's motion to dismiss and, in the alternative, for summary judgment (Doc. # 5). For the reasons set forth below, defendant's motion to dismiss will be denied and defendant's motion for summary judgment will be granted.

### Factual Background

For purposes of this opinion, the following material facts are uncontroverted or deemed admitted, pursuant to Federal Rule of Civil Procedure 56 and District of Kansas Rule 56.1.[1]

Defendant Wilson Concrete Company ("Wilson") manufactures concrete structures for highways and railroads at its plant in Kansas City, Kansas. Plaintiff James Robinson was employed as a laborer in the production division from October 3, 1991, until June 30, 1993.

Throughout the period of plaintiff's employment at Wilson, the Heavy Construction Laborers' Local Union No. 663 ("the Union") represented all employees within plaintiff's job classification. Under a collective bargaining agreement, the Union had negotiated a binding attendance policy which went into effect January 1, 1992, and was posted at the plant.

Under the attendance policy, employees were assessed points for various attendance infractions as follows: one point for being tardy by less than ninety minutes; two points for tardiness in excess of ninety minutes; and three points for unexcused absences. Points were not assessed for absences or tardiness if: (1) a supervisor gave prior approval; or (2) the absence or tardiness was due to illness or injury and the employee provided a doctor's excuse. The policy also provided for a reduction of points after twenty or more consecutive days without an attendance infraction. Discipline under the policy was as follows: a written

[1] We note that plaintiff has made little or no attempt to comply with the requirements of District of Kansas Rule 56.1 by specifically controverting defendant's stated uncontroverted facts. Despite this, the court will look to the evidentiary materials submitted by plaintiff and will decide the instant motion on the merits. Where plaintiff has not presented evidence to controvert a fact as asserted by defendant, that fact is deemed admitted. D.Kan. 56.1.

warning upon accumulation of three points; suspension without pay upon accumulation of six to eight points; and termination upon the accumulation of nine points.

On Saturday, May 22, 1992, plaintiff was tardy in reporting for work and was assessed one point. On Wednesday, June 2, 1993, plaintiff claims that he injured a muscle in his chest while lifting a steel form during his shift and that he so informed defendant. Plaintiff left work early with his supervisor's permission and was not assessed any points under the attendance policy. He went to see Dr. Elias Zirul that same day and was diagnosed with bronchitis. Plaintiff does not controvert that he informed defendant that he was diagnosed with bronchitis, and not a work-related injury.

On June 14, 1993, plaintiff had an unexcused absence and was assessed three points under the attendance policy, bringing his total points to four. Plaintiff claims that he was suffering pain in his chest related to his chest injury, but could not get in to see the doctor until June 15, 1993. On June 24, 1993, plaintiff signed a written warning which stated, "James was late 5/22 and absent 6/14 pending doctors [sic] excuse." Plaintiff does not deny that he was told that the points assessed for the unexcused absence on June 14, 1993, would be removed if plaintiff brought in a doctor's excuse. However, plaintiff did not, at any time, submit a doctor's excuse and have the three points removed.

On June 15, 1993, plaintiff was absent with a doctor's excuse and was not assessed any points. On June 23, 1993, plaintiff was absent without permission or a doctor's excuse and was assessed three points, bringing his total points to seven. Consequently, plaintiff was suspended without pay for three days on June 24, 25, and 28, 1993. There is no evidence in the record that plaintiff protested this suspension or attempted to have it set aside by presenting a doctor's excuse for either of the alleged medical absences on June 14 or June 23, 1993.

On June 25, 1993, plaintiff called his supervisor and obtained an excuse from work on June 29, 1993, to keep a doctor's appointment with Dr. Zirul on June 29, 1993. After re-viewing X-rays of plaintiff's chest, Dr. Zirul re-diagnosed plaintiff's condition as a strained pectoral muscle. Plaintiff called defendant and stated that he thought his condition, previously diagnosed and reported to defendant to be bronchitis, was work-related. Defendant told plaintiff to come in the next day and fill out paperwork related to the accident and be examined by the company physician.

Whether plaintiff was told a specific time to report on June 30, 1993, is an issue of dispute. Plaintiff says he was not given a specific time to report, while defendant states that plaintiff was told to report when the office opened at 7:00 a.m. to complete an accident report and have a medical examination. In any event, after plaintiff arrived at the plant at 9:45 a.m., he was sent to be examined by the company physician, who confirmed Dr. Zirul's diagnosis of a strained pectoral muscle and placed plaintiff on work restrictions.

Plaintiff was assessed two points for tardiness on June 30, 1993. This brought plaintiff's attendance policy points to nine—the number requiring immediate termination. After plaintiff returned from the company physician, defendant terminated plaintiff's employment.

Plaintiff did not challenge his termination under the attendance policy by filing a grievance under the collective bargaining agreement. Instead, on July 24, 1995, plaintiff filed the instant suit alleging that he was terminated in retaliation for his exercise of his worker's compensation rights. Defendant filed the instant motion to dismiss, contending that plaintiff's retaliatory discharge claim is preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1988) ("LMRA"). Alternatively, defendant moves for summary judgment, contending that under the requisite clear and convincing standard of proof plaintiff can neither make out a prima facie case or establish that defendant's stated reason for plaintiff's termination—his accumulated points under the attendance policy—was pretextual.

*Legal Standards*

■ Dismissal of a complaint pursuant to Rule 12(b)(6) is a dismissal on the pleadings unless " 'matters outside the complaint are presented to and not excluded by the court ...' in which case 'the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56....' " *Seattle–First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir.1986) (quoting Fed.R.Civ.P. 12(b)). Both parties have raised matters outside the pleadings. Accordingly, defendant's motion will be treated and decided as a motion for summary judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12. An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. This inquiry necessarily implicates the substantive evidentiary standard of proof that would apply at trial. *Id.* at 252, 106 S.Ct. at 2512.

Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1988). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D.Kan.Rule 56.1.

In this diversity case, we ascertain and apply Kansas law with the objective that the result obtained in federal court shall be the same result that a Kansas court would reach. *See Adams–Arapahoe School Dist. No. 28–J v. GAF Corp.*, 959 F.2d 868, 870 (10th Cir. 1992).

*Discussion*

*Section 301 Preemption.*

■ Defendant first argues that summary judgment should be granted on plaintiff's retaliatory discharge claim because it is preempted by section 301 of the LMRA. Plaintiff's state law claim for retaliatory discharge is preempted if it is "inextricably intertwined" with, or dependent on, the attendance policy negotiated between defendant and the Union. *See Allis–Chalmers*

*Corp. v. Lueck,* 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985); *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 403, 413, 108 S.Ct. 1877, 1880, 1885, 100 L.Ed.2d 410 (1988); *see also Jarvis v. Nobel Sysco Food Serv. Co.,* 985 F.2d 1419, 1426–27 (10th Cir.1993). This is because the policy of promoting certainty in labor negotiations and administration of collective bargaining agreements requires that collective bargaining agreements be interpreted using uniform federal labor law. *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 102, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962); see also, *Lingle,* 486 U.S. at 403–04, 108 S.Ct. at 1879–80. Stated another way, when a collective bargaining agreement is implicated, "[i]ncompatible doctrines of state law must give way to federal labor law." *Thomas v. LTV Corp.,* 39 F.3d 611, 616 (5th Cir.1994).

A collective bargaining agreement is "inextricably intertwined" if resolution of the plaintiff's claim requires interpretation of the collective bargaining agreement. *See Lingle,* 486 U.S. at 413, 108 S.Ct. at 1885. In *Lingle,* the plaintiff was discharged under the "just cause" provision of the collective bargaining agreement for allegedly filing false worker's compensation claims. *Id.* at 401, 110 S.Ct. at 2458. The Court held that the plaintiff's state law retaliatory discharge claim was independent of the collective bargaining agreement because resolution of the claim did not require interpretation of any part of the collective bargaining agreement. *Id.* at 410–11, 110 S.Ct. at 2463–64. The Court stated that the two elements required to prove a retaliation claim—actual or threatened discharge and improper motivation by the employer—raised "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer." *Id.* at 407, 110 S.Ct. at 2461. The Court concluded that section 301 did not preempt the plaintiff's state law retaliatory discharge claim. *Id.*

After *Lingle,* it is clear that section 301 preemption does not apply when an employee alleges retaliatory discharge and the employer asserts that the employee was terminated for "just cause" as required by the collective bargaining agreement. Under those circumstances, resolution of the retaliation claim does not require interpretation of the collective bargaining agreement. *See Davies v. American Airlines,* 971 F.2d 463 (10th Cir. 1992).

Defendant attempts to distinguish *Lingle* on the basis that because defendant asserts that plaintiff was terminated in accordance with the attendance policy, resolution of plaintiff's retaliatory discharge claim requires interpretation of the specific pertinent provisions of the attendance policy. However, in *Jarvis,* 985 F.2d 1419, the Tenth Circuit held that interpretation of the collective bargaining agreement was not required where the employee was terminated for taking a leave of absence in excess of the one year specified in the collective bargaining agreement. The parties disagreed over whether a brief return to work for three hours began a new twelve-month leave of absence period. *Id.* at 1421. The court viewed the defendant's non-retaliatory explanation for the plaintiff's termination, the leave of absence policy, as merely the defendant's "interpretation of the CBA [collective bargaining agreement]." *Id.* at 1427. The court stated that while the defendant's good faith interpretation of the leave provision (even if incorrect) could provide a defense against the retaliatory discharge claim, resolution of the question of whether defendant's actions were in retaliation for the worker's compensation activities of the plaintiff did not require interpretation of the leave provision. *Id.*

Similarly, in *Marshall v. TRW, Inc.,* 900 F.2d 1517 (10th Cir.1990), the court held that the plaintiff's retaliatory discharge claim was not preempted where the defendant claimed to have terminated plaintiff pursuant to a specific provision in the collective bargaining agreement which forbade an employee from taking another job while on a leave of absence. The court held that it was not necessary to interpret the collective bargaining agreement to resolve the plaintiff's retaliation claim. The court reasoned, "[t]he basic issue in our case, as in *Lingle,* is whether there was, or was not, a retaliatory discharge." *Marshall,* 900 F.2d at 1521.

The two Fifth Circuit cases cited by defendant, *Thomas v. LTV Corp.,* 39 F.3d 611, and *Medrano v. Excel Corp.,* 985 F.2d 230 (5th Cir.1993) do not convince us otherwise. *Medrano* is distinguishable on its facts and *Thomas,* although factually similar, is not all that persuasive.

In *Medrano,* 985 F.2d at 234, the plaintiff challenged the legality of a provision in the collective bargaining agreement which provided for a loss of seniority upon full settlement of a claimed disability that the defendant could not accommodate. Under those circumstances, the court held that plaintiff's state law retaliatory discharge claim was preempted because resolution of the claim required an interpretation of the collective bargaining agreement.

In *Thomas,* 39 F.3d at 614–15, the plaintiff was terminated for violation of an individual attendance probation agreement, which provided for termination if the plaintiff's absences exceeded four percent of his scheduled work time. When the plaintiff suffered an on-the-job injury and, consequently, had absences exceeding the four percent threshold, the plaintiff's employment was terminated pursuant to the attendance agreement. *Id.* The plaintiff filed suit alleging retaliatory discharge and claimed that absences caused by his work-related injury should not have been counted in the four percent absence calculation. *Id.* at 616–17. The Fifth Circuit held that because the attendance policy was the *only* basis for the plaintiff's retaliatory discharge claim, resolution of the claim required interpretation of the policy.

We acknowledge that the same might be said in the instant suit. Nevertheless, we do not believe that the Fifth Circuit's holding in *Thomas,* 39 F.3d 611, can be readily reconciled with the Tenth Circuit's holdings in *Jarvis* and *Marshall.* Although the defendant's interpretation of policies under the collective bargaining agreement were involved in *Jarvis* and *Marshall,* the Tenth Circuit held that interpretation of the collective bargaining agreement was not implicated. Thus, *Jarvis* and *Marshall* compel the conclusion that plaintiff's retaliatory discharge claim is not preempted by section 301 of the LMRA.

*Summary judgment on the merits.*

■ In Kansas, the employer-employee relationship is governed by the doctrine of employment-at-will. The doctrine holds that in the absence of a contract, express or implied, between an employee and his employer covering the duration of employment, the employment is terminable at the will of either party. *Johnson v. National Beef Packing Co.,* 220 Kan. 52, 54, 551 P.2d 779 (1976). Kansas law recognizes a public policy exception to the employment-at-will doctrine for employees discharged in retaliation for the exercise of their rights under the Workers' Compensation Act. *Murphy v. City of Topeka,* 6 Kan.App.2d 488, 630 P.2d 186 (1981).

■ The standard of proof for plaintiff's retaliatory discharge claim is proof by a preponderance of the evidence that is clear and convincing in nature. *Ortega v. IBP,* 255 Kan. 513, 527, 874 P.2d 1188, 1197–98 (1994). In *Nordstrom v. Miller,* 227 Kan. 59, 605 P.2d 545 (1980), the court articulated the meaning of clear and convincing evidence:

> [T]he witnesses to a fact must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the details in connection with the transaction must be narrated exactly and in order; the testimony must be clear, direct and weighty; and the witnesses must be lacking in confusion as to the facts at issue.

*Nordstrom,* 227 Kan. at 65, 605 P.2d 545 (citation and quotations omitted). The court in *Ortega* succinctly stated the requirements of clear and convincing evidence in the following language:

> It is clear if it is certain, unambiguous, and plain to the understanding. It is convincing if it is reasonable and persuasive enough to cause the trier of facts to believe it.

*Ortega,* 255 Kan. at 527, 874 P.2d 1188 (citing *Chandler v. Central Oil Corp.,* 253 Kan. 50, 58, 853 P.2d 649 (1993)). Under Kansas law, clear and convincing evidence is not a quantum of proof, but rather a quality of proof. *Ortega,* 255 Kan. at 527, 874 P.2d 1188; *Barbara Oil Co. v. Kansas Gas Supply Corp.,* 250 Kan. 438, 448, 827 P.2d 24 (1992).

■ Plaintiff bears the initial burden to establish a prima facie case of retaliatory discharge, by showing: 1) that he filed a claim for worker's compensation benefits or sustained an injury for which he could assert a future claim for benefits; 2) that defendant had knowledge of plaintiff's injury; 3) that defendant terminated plaintiff's employment; and 4) that a causal connection exists between plaintiff's exercise of his worker's compensation rights and his termination. *Rosas v. IBP*, 869 F.Supp. at 916; *Ortega v. IBP*, Civ.A. No. 92–2351–KHV, 1994 WL 373887, *6 (D.Kan. July 1, 1994); *Pilcher v. Board of County Comm'rs*, 14 Kan.App.2d 206, 213, 787 P.2d 1204 (1990).

■ Once plaintiff establishes a prima facie case, the burden of production shifts to defendant to rebut the inference that its motives were retaliatory, by articulating a legitimate, nonretaliatory reason for the discharge.[2] "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, ... [and] drops from the case." *St. Mary's Honor Center v. Hicks*, 509 U.S. 579, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)).

■ Plaintiff must then continue with the burden of proving by a preponderance of the evidence, which is clear and convincing in nature, that the employer acted with retaliatory intent. *See Hicks*, 509 U.S. at ——, 113 S.Ct. at 2749. Ultimately, it is plaintiff's burden to show that the discharge was "based on" the exercise of rights under the Workers' Compensation Act. *See Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 147–48, 815 P.2d 72 (1991).

■ Defendant first moves for summary judgment on the ground that plaintiff has not presented clear and convincing evidence of causation, a required element of a prima facie case. We note that a prima facie case is not an onerous burden under the McDonnell Douglas burden-shifting scheme. *See Burdine*, 450 U.S. at 255, 101 S.Ct. at 1095. Nevertheless, plaintiff must present evidence sufficient to sustain a rebuttable inference of defendant's retaliatory intent. *See Nguyen v. IBP, Inc.*, 905 F.Supp. 1471, 1482 (D.Kan.1995).

To establish a prima facie case, plaintiff asserts that IBP improperly assessed the ninth attendance point and then terminated his employment in retaliation for an anticipated exercise by plaintiff of his rights under the Kansas Workers' Compensation Act. He attempts to establish a causal nexus by pointing only to evidence that defendant did not terminate him immediately upon assessing the ninth attendance point on the morning of June 30, 1993, but did so only after being notified that the company doctor's examination confirmed the diagnosis of a strained pectoral muscle and that plaintiff was being placed on work restrictions.

Plaintiff also argues that he should not have been assessed the ninth point for being tardy on June 30, 1993, because he was not scheduled to report for work at a specific time. Plaintiff states in his affidavit, "Wilson Concrete management knew of the diagnosis of a strained pectoral muscle so I was not scheduled to work on June 30." However, plaintiff offers no corroborating evidence beyond his own assertion that he was not scheduled to work on June 30.

Defendant presents evidence that plaintiff had worked numerous shifts since the alleged injury on June 2, 1993. Defendant asserts that because plaintiff had worked since the alleged injury, notification on June 29, 1993, that plaintiff's injury was work-related did not put defendant on notice that plaintiff would be unable to work on June 30. Wilson's Office Manager, Dan Prego, states that he did not know that plaintiff would not be able to work on June 30 and did not remove plaintiff from the work schedule. Prego

---

**2.** In *Ortega*, the Kansas Supreme Court noted that Kansas courts utilize the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for discrimination and free speech employment cases. *See, Ortega*, 255 Kan. at 526, 874 P.2d at 1196–97. The court believes that Kansas courts also would apply the McDonnell Douglas analysis to workers' compensation retaliatory discharge cases. *See Rosas*, 869 F.Supp. at 916; *Ortega*, 1994 WL 373887.

states that he told plaintiff to report at the plant at 7:00 a.m. on June 30, 1993, to fill out paperwork related to his injury and be examined by the company physician. The record does not indicate what time plaintiff's regular shift began.

We question whether plaintiff has presented clear and convincing evidence that he was not in violation of the attendance policy in reporting at 9:45 a.m. on June 30. Nevertheless, taking plaintiff's version of the facts as true (and assuming that he was not given a specific time to report on June 30, 1993), defendant is still entitled to judgment as a matter of law. Even assuming that plaintiff has presented a prima facie case by showing that the ninth point was improperly assessed, plaintiff has not presented clear and convincing evidence that plaintiff's termination was improperly motivated by plaintiff's work-related injury. Timing alone, without any other evidence of retaliation, does not comport with the standard of proof for a retaliatory discharge claim in Kansas, as set forth by the Kansas Supreme Court in *Ortega*, i.e., evidence that is clear and convincing in nature.

We recognize that close proximity in time between an employee's work related injury and termination of employment may be somewhat probative of retaliatory motive. In *Chaparro v. IBP, Inc.*, 873 F.Supp. 1465, 1473 (D.Kan.1995) (a retaliatory discharge case involving an attendance policy), the court looked to timing as one factor in denying summary judgment. However, there was additional evidence of retaliatory motive, i.e., evidence that: the defendant refused to excuse the plaintiff's absence upon presentation of a doctor's note; absences originally recorded as excused were changed to unexcused; the defendant assigned the plaintiff to a job that it knew she could not perform; and the company nurse misrepresented the physical requirements of the new job assignment to the plaintiff's doctor. *Id.* at 1469–70, 1472. In addition, the plaintiff in *Chaparro* presented concrete evidence to back up her allegations. For example, she presented an attendance calendar, which had been maintained by the defendant's personnel department. The calendar showed that one of plaintiff's absences had been changed from "excused" to "unexcused." *Id.* at 1470. Under those circumstances, the court denied the defendant's motion for summary judgment.

Similarly, in *Lyden v. Hill's Pet Nutrition, Inc.*, 907 F.Supp. 343, 346 (D.Kan.1995) (discharge for poor job performance), the court looked to proximity in time in denying summary judgment, holding that "the plaintiff had presented sufficient evidence of a clear and convincing nature to raise the issue of a causal connection between her work injuries and her discharge." As in *Chaparro*, there was evidence, in addition to timing, to establish a causal connection. Specifically, the plaintiff presented evidence that: she was reprimanded for being off work for her work-related injury; the defendant refused to follow the plaintiff's light duty restrictions; and the plaintiff was warned during a performance evaluation that "upper management desire[d] to get rid of [her] because of her medical problems." *Id.* The court also noted evidence which corroborated factual allegations by the plaintiff in her deposition testimony. *Id.* In distinguishing cases that had granted summary judgment under a neutral attendance policy, the court stated,

> discharging an employee for violation of a neutral attendance policy ... is a less subjective reason than discharging an employee for alleged poor job performance. The determination of whether [the defendant] discharged [the plaintiff] for poor job performance, or in retaliation for her work injuries, requires greater scrutiny of the employer's intent.

In *Wolfenbarger v. Boeing Co.*, Civ.A. No. 92–1117–MLB, 1994 WL 149187, at *8 (D.Kan. April 1, 1994) (decided prior to *Ortega*, but applying the clear and convincing evidence standard), the defendant began an investigation *prior* to the plaintiff's work-related injury, which eventually led to the plaintiff's termination. The investigation continued while the plaintiff was on leave for his work-related injury and when the plaintiff returned from leave, he was informed that he was being terminated based on information discovered during the investigation. *Id.* at *3. The plaintiff relied on only the timing of his discharge in relation to his worker's compensation leave to establish causation and the

court granted summary judgment, holding that "the proximity in time of two events does not, in itself, indicate that one event led to the other." *Id.* at *8.

In the instant case, there is no evidence that plaintiff challenged any of the eight points assessed against him *prior* to notifying defendant on June 29, 1993, that he had sustained a work-related injury on June 2, 1993.[3] Although plaintiff alleges in his affidavit that all of the points assessed against him were related to his on-the-job injury, he did not present a doctor's excuse to defendant to have any of the six points assessed for unexcused absences on June 14, 1993, or June 23, 1993, removed from his record. Instead, plaintiff signed the written warning on June 24, 1993 (which indicated that the three points assessed for June 14 were "pending a doctor's excuse"). In addition, apparently without protest, plaintiff was put on a three-day unpaid suspension on June 24, 25, and 28, 1993, for points assessed under the attendance policy. Significantly, all of these actions by defendant under the attendance policy occurred *before* defendant was made aware on June 29, 1993, that plaintiff's medical condition was work-related.

Prior to filing this lawsuit, plaintiff did not file a grievance or otherwise challenge the defendant's application of the attendance policy to him. Plaintiff never made an attempt to have his employment reinstated by presenting a doctor's excuse for either of his unexcused absences on June 14, 1993, or June 23, 1993. It is significant to our decision that regardless of whether the ninth point was properly assessed, it is uncontroverted that plaintiff could have presented doctor's excuses and had six earlier-assessed points removed.

The timing of plaintiff's termination in relation to the examination by the company physician, alone, is insufficient to show by evidence of a clear and convincing nature that defendant's proffered non-retaliatory explanation for plaintiff's termination, the attendance policy, was pretextual. Without more, the timing of plaintiff's termination

falls short of evidence of retaliatory intent that is "certain, unambiguous, and plain to the understanding" or "reasonable and persuasive enough to cause the trier of facts to believe" that defendant terminated plaintiff because of his work-related injury. *See Ortega,* 255 Kan. at 527, 874 P.2d at 1198. There is simply nothing in the record to indicate that defendant applied the attendance policy any differently to plaintiff than to any other employee.

In addition, plaintiff also presents no evidence that the individuals involved in the decision to assess the ninth point and terminate plaintiff's employment had knowledge of the diagnosis made by the company doctor. Plaintiff states only that, "[m]anagement was informed of the diagnosis and of my work limitations." He provides no evidence to support his statement and certainly no evidence of a clear and convincing nature to establish *who* was notified. Plaintiff presents no evidence that the individuals who were involved in the decision to terminate plaintiff's employment were notified of the company doctor's diagnosis.

In sum, we do not believe that a reasonable jury could find, by evidence of a clear and convincing nature, that plaintiff's termination was improperly motivated. After carefully considering all of the evidence presented by plaintiff regarding the circumstances of his termination, we find that defendant is entitled to judgment as a matter of law on plaintiff's retaliatory discharge claim.

IT IS THEREFORE ORDERED that defendant's motion to dismiss and for summary judgment (Doc. # 5) is denied with respect to the motion to dismiss and granted with respect to the motion for summary judgment.

---

**3.** Although plaintiff states that he told his supervisor on June 2, 1993, that he thought he had injured himself, he does not controvert that, based on his doctor's original diagnosis of bronchitis, he reported to defendant that his condition was not work-related.