341 F.2d 444
 UNITED STATES of America, Appellant,
v.
John C. HESS and Faye L. Hess, John C. Hess as Executor of the Estate of C. L. Hess, deceased, and Stella B. Hess, E. H. Rights and Amelia A. Rights, Charles H. Widdifield and Laberta Widdifield, Appellees.
 No. 7797.
 United States Court of Appeals Tenth Circuit.
 February 16, 1965.
 
 Robert A. Bernstein, Washington, D. C. (Louis F. Oberdorfer, Lee A. Jackson and Harold C. Wilkenfeld, Washington, D. C., were with him on brief), for appellant.
 Ellis J. Sobol, Denver, Colo., for appellees.
 Before MURRAH, Chief Judge, HILL, Circuit Judge, and DAUGHERTY, District Judge.
 MURRAH, Chief Judge.
 
 
 1
 In this suit for refund of income taxes for the taxable years 1958 and 1959, the sole issue is whether gain realized by the taxpayers was capital gain as reported under Sections 1221 and 1231 of the Internal Revenue Code, or ordinary income as determined and assessed by the Commissioner.[1] The Government has appealed from a judgment on a jury verdict for the taxpayers, contending that the court should have sustained its motion for a directed verdict or judgment n. o. v., and ruled as a matter of law that the reported gain was ordinary income.
 
 
 2
 To sustain their burden of the case, the taxpayers showed that during the taxable years in question, and for a number of years previously, they were members of a partnership, Acetylene Service Company, engaged in the sale of compressed gases and other welding supplies and equipment. The compressed gases were sold in returnable steel cylinder-containers. Certain small cylinders (10-foot capacity) were sold with the gas contained in them. These cylinders were normally returned to the Company when empty in exchange for a full cylinder of gas. The Company reported gains from these sales as ordinary income, and that treatment is not now in issue.
 
 
 3
 Other large cylinders were ordinarily loaned to customers with each sale of their gas content, on the condition that the cylinders were to be returned within 30 days. Under these conditions the customer was not charged for the cylinder or for its use. If, however, the cylinder was not returned within the specified 30-day period, a rental (demurrage) of four cents a day in excess of 30 days was charged. After 120 days, the customer became obligated to pay for the cylinder at replacement cost, plus a few dollars for handling and paper work. The sales price ranged from $35 for the 100-foot capacity size to $45 for the largest cylinders, while gas contained therein was sold for approximately $5. The containers were given a 20-year life and were depreciated accordingly with the knowledge and consent of the Commissioner.
 
 
 4
 As a result of a shortage of supply of cylinders, the Company in 1958 mailed a form letter to customers who had held cylinders for more than 120 days, pointing out that the customer had agreed to return the cylinders within 120 days or purchase them. This letter was sent only one time with moderate success. During the taxable period in question, all letters and invoices which the Company sent out contained the words "PLEASE RETURN EMPTY CYLINDERS TODAY", prominently printed thereon.
 
 
 5
 To avoid penalties for failure to return the cylinders, some customers asked to purchase them. While the Company did not encourage their sale, if requested, it "would agree to sell it to him." This business policy and practice resulted in the sale of 588 cylinders in 1958 and 1,808 in 1959, accounting for 20 and 46 per cent respectively of the Company's net profits.[2]
 
 
 6
 The jury was instructed that in resolving the ultimate issue of capital gain or ordinary income, they must determine whether the cylinders used by the taxpayers in connection with their sales of acetylene and other gases "were held by Acetylene Service Company primarily for sale to customers in the ordinary course of trade or business;" and that the taxpayers had the burden to show that they were not held primarily for sale to customers in the ordinary course of trade or business. The jury was further told that in resolving that issue, they must consider "First, the purpose for which the cylinders were acquired and held by the Acetylene Service Company; Second, the activities of the Acetylene Service Company with respect to its cylinders, such as whether or not such cylinders were advertised for sale or whether customers were solicited; Third, the volume of sales and frequency and continuity of sales and the extent of income from sales of cylinders as contrasted with income from other activities of the Acetylene Service Company; Fourth, all the facts and circumstances surrounding these sales which tend to indicate whether or not the cylinders were held primarily for sale to customers in the ordinary course of the trade or business of Acetylene Service Company;" And that "no one or more of the factors which I have given you are conclusive, nor are the absence or presence of any one or more of the factors determinative, but in making your decision you must weigh all of the factors. If, from your consideration of all the factors, you find that the cylinders were held primarily for sale to customers in the ordinary course of trade or business of Acetylene Service Company, then your verdict should be for the defendants. On the other hand, if, from a consideration of all the factors, you find that the cylinders were not held primarily for sale to customers in the ordinary course of the trade or business of Acetylene Service Company, then your verdict should be for the plaintiffs. In the phrases `primarily held for sale' the term `primarily' means essentially or substantially, rather than principally or chiefly."
 
 
 7
 These instructions are commendably clear and understandable, and undoubtedly read upon the applicable law of this Circuit and elsewhere. See Coffey v. United States, 10 Cir., 333 F.2d 945, and cases cited; Ackerman v. United States, 5 Cir., 335 F.2d 521; Carlson v. C. I. R., 7 Cir., 288 F.2d 228; Annot. 46 A.L.R.2d 615.
 
 
 8
 Invoking Corn Products Refining Co. v. Commissioner, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29, the Commissioner contends that the classification of the cylinders as capital or non-capital may be governed by something other than the literal statutory definition of Section 1221, if the facts indicate that the cylinders were acquired not as an investment but to per-the taxpayers' business income. In Corn petuate and benefit the mainstream of Products, the taxpayer was engaged in the business of manufacturing and selling corn products. It purchased corn future contracts to protect its profit margin against the possible increase in the price of corn. The taxpayer did not deny that the futures transactions were an integral part of its trade or business. However, it did insist that the futures contracts were capital assets as defined in Section 1221 because they did not come within any clause excluding property held by the taxpayer as a capital asset. The result of the court's decision is to essentially broaden the provisions of Section 1221 to include the sale of products purchased by the taxpayer, not as an investment, but as an integral and necessary act in the conduct of his business. E. I. Du Pont De Nemours & Co. v. United States, Ct.Cl., 288 F.2d 904; Booth Newspapers, Inc. v. United States, 303 F.2d 916, 157 Ct.Cl. 886. See: Judicial Treatment of "Capital" Assets Acquired for Business; The New Criterion, 65 Yale L.J. 401.
 
 
 9
 If the sale of the cylinders in our case can be said to be essentially or in substantial furtherance of the taxpayers' business of selling gas, we would then have a Corn Products case. And, a factual basis for saying so may be assumed. Indeed, the Court undoubtedly had Corn Products in mind when it instructed the jury "If the cylinder sales were a substantial or essential part of the taxpayers' business activities, then they are a source of ordinary income." By its verdict, the jury has resolved the issue for the taxpayers, and in this posture of the case, we are asked as a matter of law to say that this is a Corn Products case.
 
 
 10
 Although the concept has been stated by many different writers in different ways and words, it is universally recognized that the court is justified in preempting the jury's verdict only when it would have no foundation in fact, and the court in the exercise of its judicial discretion would be required to set it aside.[3] See Mutual Life Ins. Co. of New York v. Bohlman, 10 Cir., 328 F.2d 289, 295. Cf. Tidewater Oil Co. v. Waller, 10 Cir., 302 F.2d 638, 642, 643. The Seventh Amendment to the Constitution provides that "no fact tried by a jury shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." Insufficiency of the evidence is one of the common law grounds for directing a verdict or granting a motion for a new trial, i. e., see Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147. But to be insufficient to support a verdict, the evidence must all be one way from which only one reasonable inference can be drawn. See Continental Ore Co. et al. v. Union Carbide & Carbon Corp. et al., 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777; Galloway v. United States, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458; Mercer v. Theriot, 377 U.S. 152, 84 S.Ct. 1157, 12 L.Ed.2d 206; United States v. Oklahoma City Retailers Assn., 10 Cir., 331 F.2d 328, 331; Mutual Life Ins. Co. of New York v. Bohman, supra; Zelinger v. Uvalde Rock Asphalt Co., 10 Cir., 316 F.2d 47, 50; Tidewater Oil Co. v. Waller, supra; Bagalay, Directed Verdicts and the Right to Trial by Jury in Federal Courts, 42 Tex.Law Rev. 1053; Wirt Blume, Origin and Development of the Directed Verdict, 48 Mich.Law Rev. 555.
 
 
 11
 In tax cases of this kind, it has been said almost with burdensome repetition that the critical question is essentially one of fact within the province of the fact finder whether it be the Tax Court or the jury. Cf. Coffey v. United States, supra; Friend v. Commissioner, 10 Cir., 198 F.2d 285, 46 A.L.R.2d 761; Mauldin v. Commissioner, 10 Cir., 195 F.2d 714. No cases have been cited, and we have found none wherein the court has taken this issue away from the jury. It is the duty of the fact finder to not only weigh the evidence and resolve conflicts, but it is also vested with the inference-drawing function which usually spells taxability.
 
 
 12
 The Government seems to concede these well-rooted principles, but simply says "under the proper view of the law, no jury could reasonably have found that the cylinders were not held primarily for sale to customers in the ordinary course of business." It is true, as the Commissioner suggested, that the sales in question were made in the ordinary course of the taxpayers' business, but in our view, it is a question of fact whether the cylinders were held primarily for sale or as an integral and essential part of the taxpayers' business activity of selling gas. Cf. E. I. Du Pont De Nemours & Co. v. United States, supra. These triable issues were, in our judgment, within the province of the fact finder. The trial court correctly appraised the facts and submitted them to the jury under proper instructions, and its judgment is affirmed.
 
 
 
 Notes:
 
 
 [1]
 Section 1221 provides in pertinent part:
 "§ 1221. Capital asset defined
 For purposes of this subtitle, the term `capital asset' means property held by the taxpayer (whether or not connected with his trade or business), but does not include —
 "(1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;
 "(2) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or real property used in his trade or business; * * *."
 Section 1231 provides in pertinent part: "§ 1231. Property used in the trade or business and involuntary conversions
 (a) General Rule. — If, during the taxable year, the recognized gains on sales or exchanges of property used in the trade or business * * * of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. * * *
 "(b) Definition of property used in the trade or business. —
 "(1) General Rule. — The term `property used in the trade or business' means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 167, held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not —
 "(A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year,
 "(B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business * * *."
 
 
 [2]
 In 1959, 1,186 of the large cylinders were purchased by one customer, National Cylinder Gas Co. The circumstances behind this purchase are as follows: The Denver Oxygen Co., a customer of Acetylene Service Co., was purchased by National, a competitor of Acetylene. National assumed the liability of Denver Oxygen Co. for demurrage on cylinders of Acetylene held by Denver Oxygen and in turn loaned to its customers. After attempting for some time to cause the return to Acetylene of all of the outstanding cylinders of the company, there were still a number of cylinders outstanding. National asked Acetylene whether it could purchase these cylinders. The price was negotiated, and the company sold 1,186 cylinders to National
 
 
 [3]
 The problem is well stated by Chief Judge Magruder in Smith v. Reinauer Oil Transport, Inc., 1 Cir., 256 F.2d 646, 649. "This preliminary judgment on the facts, which is entrusted to the trial judge, is often a delicate and difficult one to make. It is clearly not enough for the judge to determine whether he, individually, if he were sitting on the jury, would draw the inference of causal negligence. To a considerable extent the judge must be tolerant of differences of opinion, and he must recognize the possibility that, whatever might be his own view, other fair-minded men might reasonably arrive at a contrary conclusion. Often there are questions of degree, in which it is particularly hard for the judge, in exercising this preliminary judgment, to exclude altogether the personal equation."
 Rule 50, F.R.Civ.P. recognizes the discretionary power of the court in this respect and provides for a facile method for its exercise.