**Edward O. LOEHRER, Appellant,**

**v.**

**Brady R. HARCLERODE, Jr., Appellee.**

**Brady R. HARCLERODE, Jr., Appellant,**

**v.**

**Edward O. LOEHRER, Appellee.**

**Nos. 8414, 8415.**

United States Court of Appeals
Tenth Circuit.

Oct. 31, 1966.

---

Carleton A. Lathrop, Cheyenne, Wyo. (Carl L. Lathrop, Cheyenne, Wyo., with him on the brief), for Edward O. Loehrer.

Byron Hirst, Cheyenne, Wyo. (James L. Applegate and Richard B. Thomas, Cheyenne, Wyo., with him on the brief), for Brady R. Harclerode, Jr.

Before MURRAH, Chief Judge, PHILLIPS, Circuit Judge, and CHILSON, District Judge.

CHILSON, District Judge.

On July 28, 1963, Brady R. Harclerode, Jr. was injured in an automobile accident while riding as a passenger in an automobile owned and driven by Edward O. Loehrer. Harclerode instituted this action to recover damages from Loehrer for the injuries he sustained.

The jury returned a verdict in favor of Harclerode in the amount of $13,500, and both parties have appealed.

Defendant Loehrer's appeal is docketed as 8414 and plaintiff's appeal is docketed as 8415. The appeals have been consolidated for hearing and disposition and to avoid confusion we refer to the parties as they were in the lower court, that is, Harclerode, Jr. as plaintiff, and Loehrer as defendant.

The accident occurred in Wyoming which at the time had a "guest statute" (§ 31–233 Wyoming Compiled Statutes 1957) which reads as follows:

"Liability of owner to guest.—No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle and unless such gross negligence or wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought."

The plaintiff's complaint contained two statements of claim, the first alleging ordinary negligence and based upon the theory that the plaintiff was not a guest but a paying passenger within the meaning of the Wyoming Guest Statute. The second claim alleged "gross negligence and wilful and wanton misconduct" and obviously was designed to state a claim

if the plaintiff was determined to be a "guest" within the meaning of the Wyoming Statute.

Briefly summarized, the evidence discloses that the plaintiff and one Trapanese had planned to go to the Frontier Days show at Cheyenne on July 28, 1963; the defendant, who was acquainted with the plaintiff but not with Trapanese, had planned to go to Estes Park the week-end of July 28, and asked plaintiff to go with him; plaintiff told defendant of his previous arrangements with Trapanese; the defendant replied that he would be interested in changing his plans, and proposed that all three, plaintiff, defendant and Trapanese, go to the rodeo together in his Corvette; plaintiff said that it was all right with him, but they should check with Trapanese; plaintiff introduced defendant to Trapanese who said it was "okay" with him. During the course of these conversations between the plaintiff, defendant and Trapanese, there was some conversation concerning the sharing of expenses which we will discuss in more detail later.

The trial court submitted to the jury questions for special findings as well as a general form of verdict. The jury's special findings were: 1) that there was an agreement between the plaintiff and the defendant to share the expenses of the trip and that plaintiff was a paying passenger and was not a guest in defendant's car; 2) that the accident was not caused by either the gross negligence or the wilful and wanton misconduct of the defendant; 3) that the accident was caused by the ordinary negligence of the defendant. The jury returned a general verdict in favor of the plaintiff and against the defendant in the amount of $13,500.

The defendant's sole ground of appeal is that there is no competent evidence to sustain the jury's finding that the plaintiff was a paying passenger and not a guest.

■ The parties recognize the governing rule of law to be that the agreement to share expenses must have been a motivating factor for the transportation by defendant of the plaintiff in order to make plaintiff a paying passenger and not a guest. The trial court so instructed the jury without objection by either party.

The question here involved is whether or not there is evidence from which the jury could reasonably infer that the agreement to share expenses (which the jury found existed) was a motivating factor in the defendant's transporting the plaintiff from Denver to Cheyenne and return.

■ If there is no substantial conflict in the evidence bearing on this question the determination of the question is not for the jury but is a question of law for the court's determination. American Smelting & Refining Co. v. Sutyak, 175 F.2d 123 (10th Cir. 1949).

A careful review of the evidence in this case discloses no substantial conflict in the evidence as it relates to the foregoing question. Both the plaintiff and the defendant testified in considerable detail as to the arrangements under which they, together with Trapanese, made the trip to Cheyenne. Trapanese did not testify. The plaintiff testified he and Trapanese were friends and fellow employees at the May D & F department store in Denver; about two weeks prior to July 28, 1963, he and Trapanese talked about going to the rodeo in Cheyenne; neither of them had an automobile in Denver; Trapanese made arrangements to rent a Volkswagen, and they were going to share the expense of the trip.

The plaintiff testified further that he had become acquainted with the defendant four or five weeks before the accident and saw him occasionally thereafter; during the week before July 28 the defendant was shopping in the May D & F; he stopped by the plaintiff's counter and since it was about lunch time they had lunch together. The plaintiff continued,

"While we were having lunch he asked me if I had any plans for the next week-end, would I like to go to Estes Park in Colorado. I said it would be very enjoyable, but I'd already made

arrangements to go to the rodeo with Mr. Trapanese upstairs. So he said at that time that it was possible for the three of us to go in his Corvette, and would I be interested in going * * * that he would be interested in changing his plans; instead of going to Estes Park, he would go to the rodeo, the three of us could go together. So I said that it was quite all right with me but we would check with Mr. Trapanese, and which we did, and I introduced Loehrer to Trapanese at that time and, of course, it was okay with Trapanese that we should go together, the three of us, to the rodeo.

Q. What arrangements did you make for this trip at that time?—A. The matter of sharing expenses was discussed, and Mr. Trapanese and I decided that we would pay for the gas and oil and * * * if we came together in Lt. Loehrer's car.

Q. Did Mr. Loehrer agree to this? A. Yes, he did."

The plaintiff further testified that they had breakfast in Cheyenne; Trapanese paid for it; on the way home they stopped for gas just south of Cheyenne; he (plaintiff) paid for the gasoline and that it amounted to between $3 and $4. The plaintiff also testified that the sole purpose of the trip was to see the Frontier Days Rodeo and that "it was a pleasure trip altogether."

The defendant testified that his first contact with the plaintiff regarding the trip to Cheyenne was at the May D & F the Saturday before they went to Cheyenne. He testified further:

"Q. Would you explain who was present and what was said?—A. We were downstairs in the coffee shop of May D. & F., Mr. Harclerode and myself. And I was thinking of going to Estes Park and I offered to—if he wanted to come along, since he was new in town, if he wanted to go along to Estes Park. And he said, well, no, that him and Mr. Trapanese had already had plans to go to Cheyenne, Wyoming for rodeo days. And I said, 'Well, if you don't mind, I will go along, I will

drive up,' since he said they were going to rent the car from May D. & F. And, well, he said this was fine with him, if it would be okay with Mr. Trapanese. And then he went upstairs and checked with him and he said it was okay.

Q. Did you have any agreement at that time?—A. There was a discussion, sir, but as an agreement to specifics, no.

Q. As to sharing expenses?—A. Yes, there was no specific—we had a discussion, but who was going to pay what or anything like this, no."

He further testified: "As close as I can recall, as I know, we each paid for our own individual breakfast" and that after the rodeo they got in the car and drove a short distance to a gas station and he pulled into the gas station to fill the gas tank.

"Q. Was this your idea, or somebody else's, to pull in for gasoline?—A. Well, I told them what to put in the tank and to fill it up.

Q. And was there any discussion about payment or who was going to pay?—A. Well, I offered to pay, and then Mr. Harclerode insisted and Mr. Harclerode paid for the gas."

■ This evidence does not support an inference that the agreement to share expenses was a motivating factor in the defendant's undertaking to transport the plaintiff, Trapanese and himself from Denver to Cheyenne and return. The trial court should have determined as a matter of law that the plaintiff was a guest within the meaning of the Wyoming Guest Statute.

Since the jury found the accident was not caused by gross negligence or wilful and wanton misconduct of the defendant, judgment should be entered in favor of the defendant unless the trial court committed error requiring a new trial.

To determine this question we consider the plaintiff's appeal. The plaintiff contends that the trial court erred in refusing to admit evidence which was offered for the purpose of showing that the defendant entered a plea of guilty to

reckless driving in a criminal proceeding. If the trial court did in fact err in refusing to admit this evidence the case should be remanded for a new trial for such evidence if it had been admitted at the trial might have changed the jury's determination of the question of whether or not the defendant was grossly negligent or that he was guilty of wilful or wanton misconduct.

The plaintiff, to show that the defendant had pleaded guilty to reckless driving called Mr. Garfield, a Justice of the Peace in Cheyenne, Wyoming, to testify that criminal proceedings were instituted in his court against the defendant as a result of the accident, and to identify the docket containing the entries made in those proceedings.

█ If the defendant did in fact enter a plea of guilty to reckless driving, evidence thereof was admissible under Wyoming case law as an admission against interest. Friesen v. Schmelzel, 78 Wyo. 1, 318 P.2d 368. Severin v. Hays, Wyo., 372 P.2d 1017.

█ The docket was identified as Exhibit 26 offered by the plaintiff and refused by the trial court after hearing, out of the presence of the jury, the testimony of the Justice of the Peace and statements of counsel. From these proceedings it was developed that on July 30, 1963, charges of negligent homicide were filed against the defendant; on August 5, 1963, the defendant appeared with his counsel and requested a preliminary hearing; the preliminary hearing was held on September 21, 1963, at which time testimony was taken; the Justice of the Peace determined the evidence was insufficient to hold the defendant on the charge of negligent homicide and stated that he "would be willing to reduce the charge to reckless driving and find the defendant guilty;" and defendant's counsel advised the Justice of the Peace "That will be all right with us."

The docket entries originally made showed the following with reference to the hearing on September 21, 1963:

"9/21/63 Defendant present with his attorney, James A. Tilker. State is represented by John Pattno, County Attorney. Witnesses sworn in, testimony given. On motion of John Pattno, County Attorney, Count #1 is dismissed. On motion of the Court, Count #2 is reduced to reckless driving. Defendant is sentenced to pay a fine of $96.00 plus $4.00 court costs."

On June 14, 1965, the Justice of the Peace made the following amendments to the docket: 1) The name of James A. Tilker as attorney for the defendant was stricken and in place thereof was inserted Carleton A. Lathrop; 2) At the bottom of the docket was added:

"6/14/65—Defendant consented to guilty plea. (Entered nunc pro tunc). Arthur L. Garfield J. P. #1."

The trial of this action started in the lower court on the same day as the amendments to the docket and the amendments resulted when plaintiff's counsel pointed out to the Justice of the Peace that the docket showed no plea by the defendant to the reckless driving charge and the law required the docket to show the plea.

The Justice of the Peace in his testimony before the trial court in answer to the court's direction to tell what happened at the hearing on September 21, 1963, testified as follows:

"Well, it please the Court, the defendant was represented by counsel, Mr. Lathrop, at the actual preliminary hearing, and the state was represented by Mr. Pattno, the county attorney. The evidence presented the Court was, in my opinion, insufficient to bind the defendant over. I made a statement, as I recall, from the bench, to the effect that this Court would be willing to reduce the charge—reduce the charge to reckless driving and find the defendant guilty. As I recall, Mr. Lathrop consulted with his defendant—with his client and said to the Court, 'That will be all right with us.'

THE COURT: Well, did he plead?

THE WITNESS: The defendant did not make any statements in my court.

THE COURT: Well, was a plea entered?

THE WITNESS: To the best of my recollection, Your Honor, that was exactly what happened, and then I proceeded to fine the defendant and the fine was paid, and that is all that occurred."

This testimony discloses no arraignment of the defendant on a reckless driving charge and no plea thereto. His testimony of what took place at the hearing did not justify the amendment of the docket to include "Defendant consented to guilty plea." The most that can reasonably be inferred from this testimony is that the Justice of the Peace after hearing the evidence determined that evidence did not justify a charge of negligent homicide but did justify a finding that the defendant was guilty of reckless driving; that the Justice of the Peace proposed to reduce the charge to reckless driving and find the defendant guilty thereof and the defendant through his lawyer advised the Justice of the Peace he had no objection to this procedure. This does not permit a conclusion that the defendant pleaded guilty to reckless driving.

██ It is a general rule of law that a court may correct errors in its docket and Wyoming follows this general rule, (Bales v. Brome, 56 Wyo. 111, 105 P.2d 568) but we note that the Wyoming Supreme Court in that case at page 573 of the Pacific Report recognized another general rule which is that in the exercise of the power of amendment the court is not authorized to do more than make its records correspond to the actual facts.

██ In this case the docket was amended some twenty months after the hearing was held; the amendment was made solely upon the memory of the Justice of the Peace without any supporting written memoranda or documents or records made at the time; the amendment was made without notice to the defendant who was a party to that proceeding and without an opportunity on his part to be heard, and the amendment made does not correspond with what the Justice of the Peace himself testified occurred at the hearing.

We conclude that in these circumstances the trial court properly refused the offer into evidence of Exhibit 26 or the portion thereof which states the defendant "consented to guilty plea."

Plaintiff contends in his brief that the plea of guilty at the hearing on September 21, 1963, could be proven by oral testimony of the Justice of the Peace as well as the docket. Assuming this to be true we point out that the Justice of the Peace did not testify that the defendant entered a plea of guilty to reckless driving nor does his testimony of what took place justify the drawing of an inference that he entered such a plea.

The case is remanded to the District Court with directions to enter judgment notwithstanding the verdict in favor of the defendant and against the plaintiff and defendant have judgment for his costs.

MURRAH, Chief Judge (dissenting).

I agree with everything Judge Chilson says in his excellent treatment of this extremely close case, except the crucial conclusion that the evidence is insufficient to " * * * support an inference that the agreement to share expenses was a motivating factor in the defendant's undertaking to transport the plaintiff * * * from Denver to Cheyenne and return."

Viewing the evidence most favorably to the plaintiff, I am unable to agree that all reasonable men would conclude that the agreement was not a motivating factor causing Lt. Loehrer to change his mind as he did. In cases like these involving the probing of men's minds to ascertain motivation we should be slow to preempt the trial judge's deliberate decision to submit this subjective determination to the jury. Certainly we should not superimpose our judgment on that of the trial court unless we can say from our objective appraisal of all the facts and circumstances that his judgment on the sufficiency of the evidence to go to the

jury was clearly unwarranted. I. e. see High Voltage Engineering Corp. v. Pierce, 10 Cir., 359 F.2d 33; United States v. Hess, 10 Cir., 341 F.2d 444.

I would sustain the trial court's decision to submit the case to the jury.