**Filed 12/24/96**
TENTH CIRCUIT

AMANDA M. CHAPARRO,

   Plaintiff-Appellant
   /Cross-Appellee,

v.

IBP, INC.,

   Defendant-Appellee
   /Cross-Appellant,

_____

STATE OF KANSAS, DEPARTMENT
OF HUMAN RESOURCES,

   Movant/Cross-Appellee.

Case Nos. 95-3078
     95-3098

---

### ORDER AND JUDGMENT[*]

---

Before HENRY, MURPHY and RONEY,[**] Circuit Judges.

---

 [*]  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

 [**]  The Honorable Paul H. Roney, Senior Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

In this retaliatory discharge case filed in diversity, plaintiff-appellant Amanda Chaparro appeals the district court's entry of judgment as a matter of law in favor of defendant-appellee IBP, Inc. ("IBP"). Ms. Chaparro argues that the district court erred in ruling that she did not meet the evidentiary burden necessary to support her claim that IBP terminated her employment in retaliation for exercising her rights under the Kansas Workers' Compensation Act. Ms. Chaparro also claims that the district court erred in excluding the testimony of two of her witnesses. IBP cross-appeals, arguing that the district court erred in excluding statements Ms. Chaparro made to the Kansas Department of Human Resources ("KDHR") in the course of applying for workers' compensation benefits. In response, Ms. Chaparro and KDHR argue that Ms. Chaparro's written and recorded statements to the KDHR are protected as confidential pursuant to Kan. Stat. Ann. § 44-714(f). We assert jurisdiction under 28 U.S.C. § 1291, and, for the reasons stated below, affirm the district court's judgment.

## I. BACKGROUND

### A. Factual History

Ms. Chaparro worked at IBP's Finney County, Kansas meat packing and processing facility from May 8, 1989 until IBP terminated her employment on May 14, 1991 for allegedly violating its unexcused absences policy. On October 22, 1990, Ms. Chaparro began experiencing pain in her left arm while working on the job and reported

this pain to the dispensary nurse, Juanita Meadows. After examining her, Nurse Meadows placed her in a special program for monitoring and treating work-related injuries and returned Ms. Chaparro to her regular job.

The first absence relevant to Ms. Chaparro's termination occurred on October 29, 1990. That day, she left work early to see her personal physician, Dr. Nonhof. Because her appointment ended after her shift, she did not return to work that day nor did she call in to report that she would not be returning. The next day, she returned to work with a doctor's excuse which stated that she had been under the doctor's care and would be unable to work until November 1, 1990. IBP assessed Ms. Chaparro an unexcused absence for failing to return to work or to call in after her appointment on October 29, 1990. Ms. Chaparro discussed the unexcused absence with her supervisor at the time, Steve Widler, but she did not seek administrative review of the decision to IBP's personnel director.

On November 1, 1990, after several visits to the dispensary, Nurse Meadows imposed restrictions on Ms. Chaparro's use of her left hand and placed her on a "light duty" paint crew job until November 26, 1990. On December 4, 1990, after being placed back in her former job trimming cow tails, Ms. Chaparro reported further problems with her left arm to the nurse. On December 7, 1990, at IBP's direction, Ms. Chaparro began medical treatment with Dr. Lauren Welch. Dr. Welch initially diagnosed Ms. Chaparro as suffering from carpal tunnel syndrome, but later changed this diagnosis to deQuervain's

syndrome of the left wrist and tennis elbow. Due to her medical condition, Dr. Welch restricted Ms. Chaparro to work assignments in which she would not be required to use her left hand and continued to examined and treat Ms. Chaparro approximately every two weeks following the December 7, 1990 visit. In accordance with Dr. Welch's medical recommendations, IBP reassigned Ms. Chaparro to a number of light duty jobs including labeling, laundry room, clean-up, and lower rendering.

On March 5, 1991, Ms. Chaparro retained an attorney and filed a workers' compensation claim to recover for her work-related injuries. IBP received notification of the claim on March 8, 1991. In her claim, Ms. Chaparro sought compensation for temporary total disability benefits along with job accommodation and a vocational rehabilitation evaluation.

Following a medical examination on May 1, 1991, Dr. Welch revised Ms. Chaparro's medical restrictions to allow the limited use of her left hand while not lifting more than ten pounds. The new dispensary nurse, Rhonda Shipley, then assigned Ms. Chaparro to wrapping rounds, which consists of using both hands to tear off a sheet of plastic wrap and place it on exposed carcasses or "rounds." On May 6, 1991, Ms. Chaparro informed Nurse Shipley, that because of her injury, she was having difficulty wrapping rounds because it entailed using both of her hands and raising her arm above her shoulder. At Ms. Chaparro's urging, on May 9, 1991, Nurse Shipley called Dr. Welch who, based upon Nurse Shipley's description, ascertained that the job description fell

4

within Ms. Chaparro's medical restrictions. Ms. Chaparro visited Dr. Welch that same day, at which time Dr. Welch concluded that, while Ms. Chaparro's description of the job differed from that of Nurse Shipley's, the job fell within her medical restrictions.

On May 10, 1991, Ms. Chaparro complained to Nurse Shipley of fever, nausea, achiness, dizziness, and vomiting. Nurse Shipley instructed Ms. Chaparro to see her personal physician and to obtain a release from her physician prior to returning to work. Nurse Shipley also instructed Ms. Chaparro to call in every day that she would be unable to work at least 30 minutes prior to her shift. Ms. Chaparro testified that she told Nurse Shipley that she did not have a phone and the nearest one to which she had access was two to three blocks away. Ms. Chaparro then went to see Dr. Nonhoff, but was unable to get an appointment until Monday, May 13, 1991. Ms. Chaparro testified that, after making her appointment, she returned to IBP and told Nurse Shipley about the appointment. She also testified that she telephoned the personnel office on May 11, 1991 at approximately 6:00 a.m. and left a message on the office's answering machine stating that: "I wouldn't be able to make it in because I couldn't get a doctor's excuse. I couldn't get to see the doctor until the 13th." Trial record, at 157. On May 14, 1991, Ms. Chaparro returned to work with a medical release.

That same day, her supervisor, Dennis Jones, informed her of the decision of the personnel manager, Rick Nimrick, to terminate her from employment based on two personnel office "employee action reports" which documented that she had unexcused

5

absences for May 11 and 13, 1991, and had failed to notify the personnel office that she would be absent. These two absences, in addition to her October 29, 1990 absence, violated IBP's three unexcused absences policy.[1] Ms. Chaparro appealed her termination to Mr. Nimrick, stating that she had called in and left a message on the answering machine on May 11, 1991. Mr. Nimrick testified at trial from his notes that Ms. Chaparro had said that she thought she did not need to call in for the two days she missed since she was sent home by the nurse. Mr. Nimrick stated that he did not recall Ms. Chaparro saying that she had called in and that, if she had, he would have mentioned it in his notes and checked the answering machine to verify whether or not she had left a message. Because the company keeps the tapes for approximately two months, the tape was not available at trial. Mr. Nimrick declined to excuse her absences and terminated her employment based upon her three unexcused absences.

## B. Procedural History

---

[1]    IBP's "Unexcused Absence and Tardy Policy" provides that an employee will be terminated from employment for receiving three unexcused absences. The policy defines an "unexcused absence" as:

(1) any absence where an employee fails to notify the Company at least thirty (30) minutes prior to his starting time;

(2) any absence from which an employee cannot satisfactorily provide a justifiable reason for absence;

(3) any absence for personal reasons if the employee does not get prior approval for taking time off from his supervisor (emergencies and unusual circumstances will be reviewed by your supervisor and the Personnel department) . . . .
Aple's App., Vol. I, at 79.

6

On May 14, 1993, Ms. Chaparro filed the present action claiming that IBP terminated her employment in retaliation for her filing of a claim under the Kansas Workers' Compensation Act. At trial, Ms. Chaparro presented testimony by five witnesses relevant to this appeal: Martha Arteaga, a co-worker; Minh Doung, the present personnel manager at the IBP's Finney County facility; Doug Bolton, the present complex personnel manager at IBP's Finney County facility; Gary Korte, a former IBP in-house attorney; and Ms. Chaparro herself. The district court excluded the testimony of Jennifer Dombkowski and Tim Russell, supervisors at other IBP facilities, who Ms. Chaparro sought to have testify regarding IBP's employment practices.

Through her witnesses, Ms. Chaparro sought to establish several facts that, taken together, would establish a causal connection between her filing of a workers' compensation claim and IBP's termination of her employment. These included: (1) derogatory comments made about her by her supervisor and the former nurse; (2) IBP's policies which sought to limit workers' compensation costs to the company; (3) the proximity in time between her filing of her workers' compensation claim and the events leading to her termination; and (4) IBP's use of the three unexcused absences policy as a pretext for retaliating against her because she believes IBP unfairly assessed all three absences against her. At the close of Ms. Chaparro's case, IBP moved for judgment as a matter of law. The court denied IBP's motion.

IBP then called four witnesses: Dr. Lauren Welsh, Rhonda Shipley, Dennis Jones, and Rick Nimrick. Dr. Welsh and Nurse Shipley documented Ms. Chaparro's injuries and subsequent treatment, and Mr. Bolton and Mr. Nimrick explained IBP's personnel policies and Ms. Chaparro's termination. IBP also sought to subpoena documents from the KDHR concerning written and oral statements made by Ms. Chaparro to the KDHR in connection with her application for workers' compensation benefits. The district court, on the motion of the KDHR, excluded this evidence on the basis that it was protected as privileged and confidential pursuant to Kan. Stat. Ann. § 44-714(f). At the close of all the evidence in the case, IBP renewed its motion for judgment as a matter of law. The district court granted IBP's motion and this appeal followed.

## II. DISCUSSION

Ms. Chaparro challenges the district court's grant of IBP's motion for judgment as a matter of law on the basis that she produced sufficient evidence to support a finding by a reasonable jury that IBP acted with retaliatory intent in dismissing her from employment.[2] Ms. Chaparro also challenges the district court's exclusion of the

---

[2] Ms. Chaparro also challenges the district court's grant of IBP's motion for judgment as a matter of law on the basis that it denied her of her Seventh Amendment right to trial by jury. Insufficiency of the evidence was one of the common law grounds existing prior to the adoption of the Seventh Amendment in 1791 which allowed a trial judge to direct a verdict in a case. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 250 (1940). It is well established that this procedure, from which the present Fed. R. Civ. P. 50 is derived, does not violate the Seventh Amendment. Galloway v. United States,

8

testimony of Jennifer Dombkowski and Tim Russell as an abuse of discretion.  IBP cross

appeals, asserting that the district court erred in quashing its subpoena duces tecum on the

KDHR as privileged and confidential information pursuant to Kansas statute.  The KDHR

responds as cross-appellee that Kan. Stat. Ann. § 44-714(f) protects from disclosure

information and documents it generates related to the filing of workers' compensation

claims.

Because we uphold the district court's grant of IBP's motion for judgment as a

matter of law, we decline to consider whether Kan. Stat. Ann. § 44-714(f) protects the

KDHR from disclosing information it generates concerning workers' compensation

claimants.  Therefore, we limit our consideration to the following issues on this appeal:

(1) did the district court err in granting IBP's motion for judgment as a matter of law on

Ms. Chaparro's retaliatory discharge claim; and (2) did the district court abuse its

discretion in excluding the testimony of plaintiff's witnesses who would testify regarding

employment conditions at another of IBP's facilities?

### A. <u>Motion for Judgment as a Matter of Law</u>

---

319 U.S. 372, 389-92 (1943); <u>see</u> <u>United States v. Hess</u>, 341 F.2d 444, 448 (10th Cir. 1965).  On this basis, we consider Ms. Chaparro's Seventh Amendment claim as subsumed within her challenge to the district court's grant of judgment as a matter of law for IBP and the question of whether there was a "legally sufficient evidentiary basis for a reasonable jury" to find in her favor.  Fed. R. Civ. P. 50(a)(1).

We review the grant of a Fed. R. Civ. P. 50(a) motion for judgment as a matter of law de novo, applying the same legal standards as did the district court. Clark v. Brien, 59 F.3d 1082, 1086 (10th Cir. 1995); Thompson v. State Farm Fire & Cas. Co., 34 F.3d 932, 941 (10th Cir. 1994). In conducting this review, we must determine whether, viewing the evidence in the light most favorably to the non-moving party, the inferences to be drawn from the evidence are so clear that reasonable minds could not differ as to the conclusion. McKenzie v. Renberg's Inc., 94 F.3d 1478, 1483 (10th Cir. 1996), Rajala v. Allied Corp., 919 F.2d 610, 615 (10th Cir. 1990). In a diversity case such as this one, "we examine the evidence in terms of the underlying burden of proof as dictated by state law." Vasey v. Martin Marietta Corp., 29 F.3d 1460, 1464 (10th Cir. 1994).

### 1. The Kansas Burden of Proof

In Kansas, the employer-employee relationship is governed by the employment-at-will doctrine. The doctrine holds that, in the absence of an express or implied agreement to the contrary, the employment is terminable at the will of either party. Johnson v. National Beef Packing Co., 551 P.2d 779, 781 (Kan. 1976). An exception to this general rule exists if an employee is dismissed in retaliation for exercising his or her rights under the Kansas Workers' Compensation Act. Murphy v. City of Topeka, 630 P.2d 186, 192 (Kan. Ct. App. 1981); Ortega v. IBP, Inc., 874 P.2d 1188, 1191 (Kan. 1994).

In Ortega, the Kansas Supreme Court set out the evidentiary standard for evaluating a retaliatory discharge claim in Kansas. The court there provided: "A party

10

having the burden of proving a discharge from employment in retaliation for having filed a workers compensation claim must establish that claim by a preponderance of the evidence, but the evidence must be clear and convincing in nature." 874 P.2d at 1198. In defining this somewhat unique, hybrid standard, the court explained that the "preponderance of the evidence standard" requires "evidence which shows a fact is more probably true than not true." Id. at 1197. The court stated that evidence is "clear if it is certain, unambiguous, and plain to the understanding"; and "it is convincing if it is reasonable and persuasive enough to cause the trier of facts to believe it." Id. at 1198 (citing Chandler v. Central Oil Corp., 853 P.2d 649, 655 (Kan. 1993)). For the evidence to be "clear and convincing":

> [T]he witnesses to a fact must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the details in connection with the transaction must be narrated exactly and in order; the testimony must be clear, direct and weighty; and the witnesses must be lacking in confusion as to the facts at issue.

Modern Air Conditioning, Inc. v. Cinderella Homes, Inc., 596 P.2d 816, 824 (Kan. 1979)(citations omitted).

## 2. Elements of Retaliatory Discharge in Kansas

To establish a prima facie case of retaliatory discharge under Kansas law, a plaintiff must produce evidence demonstrating: (1) that the plaintiff filed a claim for workers' compensation benefits or sustained an injury for which he or she might assert a future claim for such benefits; (2) that the employer had knowledge of the plaintiff's

11

compensation claim or the fact that the plaintiff had sustained a work-related injury for which he or she might file a future claim for benefits; (3) that the employer terminated the plaintiff's employment; and (4) that a causal connection existed between the protected activity or injury, and the termination.  Huffman v. Ace Elec. Co., Inc., 883 F. Supp. 1469, 1475 (D. Kan. 1995); Pilcher v. Board of County Comm'rs of Wyandotte County, 787 P.2d 1204, 1208 (Kan. Ct. App. 1990).  Ultimately, the plaintiff can recover only upon proving that the discharge was "based on" the employer's intent to retaliate.[3]  See Brown v. United Methodist Homes for the Aged, 815 P.2d 72, 88 (Kan. 1991).

---

[3]      The federal district courts in Kansas have applied the United States Supreme Court's burden shifting approach established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), for analyzing state retaliatory discharge claims.  See Huffman, 883 F. Supp. at 1475; accord Robinson v. Wilson Concrete Co., 913 F. Supp. 1476, 1483 (D. Kan. 1996), Rosas v. IBP, Inc., 869 F. Supp. 912, 916 n. 1 (D. Kan. 1994).  Under the burden shifting approach, once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to rebut the inference that its motives were retaliatory by articulating a legitimate, non-retaliatory motive for the termination.  If the defendant carries this burden of production, thereby refuting the plaintiff's prima facie case, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence, which is clear and convincing in nature, that the defendant acted with retaliatory intent.  Rosas, 869 F. Supp. at 916.

While the Kansas courts have never specifically held that this burden shifting approach applies in the context of retaliatory discharge cases, the Kansas Supreme Court in Ortega discussed its application in employment discrimination and public employee discharge cases within the context of elaborating the standard for analyzing retaliatory discharge claims.  874 P.2d 1188, 1196-97.  We agree with the federal district courts that Kansas courts would presumptively apply the McDonnell Douglas burden shifting approach in retaliatory discharge cases.  However, because we hold that Ms. Chaparro has not established a prima facie case for retaliatory discharge under Kansas law, we do not analyze her claim in the context of this burden shifting approach.

The central issue on this appeal is whether Ms. Chaparro met the fourth element of her prima facie case. That is, whether, at the close of all of the evidence in the case, there was "clear and convincing" evidence by which a reasonable juror could find "it more probable that not" that IBP based its decision to terminate Ms. Chaparro on her filing of a workers' compensation claim. Regardless of whether there is a factual dispute as to whether Ms. Chaparro should have been terminated for the three unexcused absences assessed against her, we conclude that Ms. Chaparro failed to present clear and convincing evidence that IBP's termination decision was improperly motivated by her filing of a workers' compensation claim.

### 3. Ms. Chaparro's Evidence

Our task on appeal is to review Ms. Chaparro's evidence to determine if it provides the "preponderance of evidence which is clear and convincing" as required by Kansas law. First, Ms. Chaparro introduced evidence alleging that IBP employees made derogatory statements about her and sought to terminate her from employment after she reported and began receiving treatment for her injuries. Martha Arteaga, an IBP employee who worked with Ms. Chaparro, testified that she overheard former IBP nurse Juanita Meadows refer to Ms. Chaparro as a "lazy bitch" and that she observed Nurse Meadows mistreating Ms. Chaparro in her work assignments following Ms. Chaparro's accident. The difficulty in utilizing this testimony to show retaliatory intent is that Ms. Chaparro offered no evidence to demonstrate that Nurse Meadows had a supervisory

13

capacity at IBP or had any influence regarding Ms. Chaparro's termination. Most significantly, it is undisputed that Nurse Meadows left her dispensary job in March 1991, two months prior to Ms. Chaparro's termination.

Ms. Arteaga also testified that she overheard Dennis Jones, Ms. Chaparro's work supervisor, discussing Ms. Chaparro with another IBP employee in which she stated: "they was saying, oh, I'm going to fire her ass, you know, because she's complaining too much." Trial record, at 15. After being asked whether there was any question that she heard Mr. Jones say that he was going to fire Ms. Chaparro, Ms. Arteaga responded: "No. He just say that she was making trouble." Id. While this evidence might provide some-- although far from "clear and convincing"--evidence of retaliatory intent, there is a problem in linking these comments directly with IBP's decision to terminate Ms. Chaparro's employment. The testimony of Mr. Jones and the personnel director, Rick Nimrick, indicates that Mr. Jones had no influence over whether or not to terminate an employee for absences. The decision to discharge employees for unexcused absences is generated by Mr. Nimrick in the personnel department and only sent to the supervisor to relay the decision to the employee. The only input of the supervisor regarding absences, according to Messrs. Jones and Nimrick, is to relay information to the personnel office concerning employee absences. Without any such connection to her dismissal from employment, we find that this evidence provides no support for determining whether IBP acted with retaliatory intent in discharging Ms. Chaparro.

14

Second, Ms. Chaparro offers evidence regarding IBP's efforts to reduce workers' compensation costs in seeking to prove that there is a corporate policy to retaliate against employees who file workers' compensation claims. Gary Korte, a former IBP corporate attorney, testified that IBP is self-insured for workers' compensation benefits, that the company offers prizes for employees to promote workplace safety, that the company disseminated information to discourage the hiring of attorneys in bringing workers' compensation claims, and that the company has an annual goal for workers' compensation of $350.00 per employee. This evidence, however, even if it demonstrates an attempt by the company to discourage workers' compensation claims, does nothing to support a claim that the company retaliated against employees once such claims were filed. Indeed, many large businesses make such efforts and understandably so. Furthermore, Mr. Korte stated on cross-examination that he believed that it actually costs the company more money when they terminated an employee because it increased the average weekly wage and could trigger vocational retraining which would increase the cost of providing workers' compensation benefits.

Third, Ms. Chaparro asserts that the proximity in time between the filing of her workers' compensation claim and termination from IBP is indicative of retaliatory intent. IBP received notice of Ms. Chaparro's claim on March 8, 1991 and dismissed her from employment on May 14, 1991--a period of approximately 2 months. We recognize that close proximity in time may provide some probative evidence of retaliatory intent. In

15

Robinson v. Wilson Concrete Co., 913 F. Supp. 1476 (D. Kan. 1996), for instance, in reviewing retaliatory discharge cases in Kansas, the district court stated that while proximity in time can provide some evidence of retaliatory motive, it alone is "insufficient to show by evidence of a clear and convincing nature that defendant's proffered nonretaliatory explanation for plaintiff's termination . . . was pretextual." Id. at 1485. However, such evidence coupled with other, more probative evidence, will provide support for a retaliatory discharge claim. Id. at 1484-85.

Finally, Ms. Chaparro focuses most of her attention on rebutting IBP's proffered reason for dismissing her--the neutral unexcused absences policy--which she claims IBP used merely as a pretext for retaliation. As discussed above, Ms. Chaparro testified (1) that she had spoken with Nurse Shipley on May 10, 1991, informing her that she would be unable to see a doctor until May 14; (2) that she had called in from a neighbor's phone on May 11 and left a recorded message with IBP's personnel office; and (3) that she returned to work on May 14 with a doctor's excuse.

Ms. Chaparro introduced IBP's employment calendar into evidence to support her contention that she had called in that day. IBP's attendance calendar for Ms. Chaparro shows that the number "12"--the code for an excused absence--had originally been written down for May 11, 1991. Written over the "12" is an "11"--the code for an unexcused absence. In addition, on the back of the calendar where the explanation for absences are contained, is written "sick" for May 11. At trial, neither party offered any

16

clear evidence as to who made the change or why it was made, other than IBP's suggestion that it was a clerical error.

IBP's written policy and testimony by IBP personnel supervisors Messrs. Doung and Nimrick provide that an employee is required to inform the company prior to each day he or she will be absent. Trial record, at 29, 34, 385-86. Ms. Chaparro also acknowledged in her testimony that Nurse Shipley had instructed her to call in every day that she would be absent when she left IBP on May 10, 1991 to see her family physician. Id. at 216. Ms. Chaparro does not contend that she called in on October 29, 1990 or May 13, 1991, nor that she originally contested the assessment of an absence on October 29-- the two other days for which IBP cited her unexcused absences. Furthermore, there is no evidence in the record that returning with a doctor's excuse after an unexcused absence will excuse that absence. Thus, the only issue remaining to this argument is whether Ms. Chaparro called in on May 11, and whether the calendar change supports her testimony.

While this evidence does indicate that there is a factual dispute as to whether Ms. Chaparro should have been assessed an unexcused absence on May 11, it does not demonstrate that IBP acted with retaliatory intent in dismissing her from employment. As Kansas law recognizes, an employer may terminate an employee pursuant to a neutral attendance policy--even where the employee is injured and the employer cannot provide suitable work. Raymond v. Archer Daniels Midland, Co., 762 F.Supp. 901, 904-05 (D.Kan. 1991). Aside from insinuating conspiratorial action on the part of IBP's

17

personnel office, Ms. Chaparro does not provide any evidence to support her contention that the personnel office acted with retaliatory intent in citing her an unexcused absence on May 11. The personnel director's notes of his conversation with Ms. Chaparro on May 14 do not indicate that Ms. Chaparro made any claim that she had telephoned IBP. More significantly, on cross-examination, Ms. Chaparro's testimony seemed unclear as to whether she called in when she stated: "I explained to [Mr. Nimrick] that I did not have a phone at that time. And I couldn't get to a phone. I couldn't possibly disturb my neighbor at six, five o'clock in the morning to use her phone. That's what I had told Mr. Nimrick." Trial record, at 224-25. On balance, the evidence offered by Ms. Chaparro on this issue does not meet the "clear and convincing" standard required by the Kansas courts to demonstrate retaliatory intent.

The foregoing evidence offers no proof that IBP terminated Ms. Chaparro for filing a workers' compensation claim. The evidence presented by Ms. Chaparro falls short of evidence of retaliatory intent that is "certain, unambiguous, and plain to the understanding" or "reasonable and persuasive enough to cause the trier of facts to believe" that defendant terminated plaintiff "based on" her filing of a workers' compensation claim. See Ortega, 874 P.2d at 1198; Brown, 815 P.2d at 88. No evidence exists to show that an excused absence was later altered because anyone at IBP desired to retaliate against Ms. Chaparro for filing a workers' compensation claim. Admittedly, this evidence would be difficult to obtain. But it is Kansas law which sets this extremely high

18

hurdle and it is Ms. Chaparro's responsibility to offer more than just speculation to meet her evidentiary burden of proof. In sum, we agree with the district court that a reasonable jury could not find, based on a preponderance of evidence which is clear and convincing, that IBP terminated Ms. Chaparro based on her filing of a workers' compensation claim. After carefully considering all the evidence presented at the trial, we find that IBP is entitled to judgment as a matter of law on Ms. Chaparro's retaliatory discharge claim.

## B. The Testimony of Ms. Dombkowski and Mr. Russell

Where a trial court excludes evidence and the offering party properly objects at trial, we will reverse the court's decision only if the exclusion of the evidence constitutes an abuse of discretion that results in "manifest injustice to the parties." Thompson, 34 F.3d at 939 (citing Angelo v. Armstrong World Indus. Inc., 11 F.3d 957, 960 (10th Cir. 1993)). The district court is given broad discretion in deciding evidentiary matters. Gilbert v. Cosco, Inc., 989 F.2d 399, 402 (10th Cir. 1993). Under the abuse of discretion standard, "a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Pandit v. American Honda Motor Co., Inc., 82 F.3d 376, 379 (10th Cir. 1996).

Ms. Chaparro appeals the district court's decision to exclude the testimony of Jennifer Dombkowski and Tim Russell. Ms. Dombkowski and Mr. Russell are both

19

former supervisors at IBP's Emporia, Kansas facility. Ms. Chaparro sought to offer their testimony regarding specific events and conversations at IBP's Emporia facility to demonstrate that "supervisors are instructed to fire injured employees" and that they "are asked to find pretext to fire injured employees." Aplt's Br., at 39. According to Ms. Chaparro, such testimony would have allowed her to present to the jury "the whole rational [sic] for which plaintiff was terminated" by providing direct evidence of IBP's state of mind. Id. at 41-42.

The district court excluded the testimony based on three independent grounds: (1) that the evidence was not relevant under Fed. R. Evid. 401 in that it had no tendency to prove any ultimate facts at issue in the case; (2) that Ms. Chaparro failed to demonstrate pursuant to Fed. R. Evid. 104(b) a necessary condition of fact, that is, that what allegedly occurred at the Emporia facility had anything to do with events at the Finney County facility; and (3) that even if it were relevant, the probative value of the proffered testimony was substantially outweighed by the danger of confusion of the issues in the case under Fed. R. Evid. 403. Trial record, at 183-85.

We find no abuse of discretion in the district court's ruling to exclude the testimony of both witnesses. While the testimony of other employees as to their treatment by an employer is relevant in assessing an employer's retaliatory intent, a plaintiff must demonstrate that the circumstances involving the other employees are such that their statements can "logically or reasonably be tied to the decision to terminate [the plaintiff]."

20

Spulak v. K Mart Corp., 894 F.2d 1150, 1156 n.2 (10th Cir. 1990). In this instance, the events to which both Ms. Dombkowski and Mr. Russell would have testified occurred after Ms. Chaparro's termination from employment at the Finney County facility on May 14, 1991. Specifically, Ms. Dombkowski sought to testify regarding conversations with her immediate supervisor at the Emporia facility which occurred between October 1992 and July 1993. Though Ms. Chaparro did not offer the substance of Mr. Russell's testimony into evidence, the district court concluded that his testimony would be excluded on the same basis as Ms. Dombkowski's testimony. Trial record, at 188. Ms. Chaparro also failed to establish any similarity in the employment situations of the two facilities, that either witness knew anyone or anything about personnel decisions at the Finney County facility, or that their testimony would provide evidence of a company-wide policy of retaliation against employees who file workers' compensation claims. See Trial record, at 180-85.

On this basis, the proffered testimony did not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Such evidence, if introduced, could also lead to confusion of the issues by members of the jury which Fed. R. Evid. 403 seeks to prohibit. Thus, we find that the district court did not abuse its discretion in excluding the testimony of Ms. Dombkowski and Mr. Russell.

## III. CONCLUSION

For the reasons discussed fully above, that is, that Ms. Chaparro failed to establish a prima facie case for retaliatory discharge pursuant to Kansas law and that the district court did not abuse its discretion in excluding the testimony of Ms. Dombkowski and Mr. Russell, we AFFIRM the judgment of the district court.   We need not reach the cross-appeal issue of whether Kan. Stat. Ann. § 44-714(f) protects the KDHR from disclosing information related to workers' compensation claimants.

The mandate shall issue forthwith.

Entered for the Court,

Robert H. Henry
Circuit Judge

22